931 F.2d 57
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ed JOHNSON, Defendant-Appellant.
 No. 90-5813.
 United States Court of Appeals, Sixth Circuit.
 April 23, 1991.
 
 Before KRUPANSKY and DAVID A. NELSON, Circuit Judges, and GILMORE, District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from a conviction for misapplication of federally-insured funds. The defendant-appellant presents four arguments in favor of reversal: (1) that the district court should have granted his motion to dismiss the indictment; (2) that the jury's verdict was not supported by sufficient evidence; (3) that the district court erred in denying his motions for a mistrial; and (4) that the district court judge displayed impermissible bias before the jury.
 
 
 2
 Following oral argument the appellant's attorney moved to withdraw as counsel. The motion does not comport with this court's rules, and it will be denied for that reason. The arguments for reversal of the conviction are not persuasive, and the conviction will be affirmed.
 
 
 3
 * Defendant Ed Johnson--a former chief executive officer of Magnolia Federal Savings & Loan Association in Knoxville, Tennessee--was indicted in June of 1989 on charges of willful misapplication of federally-insured funds in violation of 18 U.S.C. Sec. 657. Count One of the indictment charged Mr. Johnson with the willful misapplication of approximately $448,000 on or about June 18, 1984. Count Two charged him with the willful misapplication of approximately $150,000 on or about June 29, 1984.
 
 
 4
 The case was tried to a jury in February of 1990. The jury returned a verdict of guilty on both counts, and the district court (Wiseman, J.) sentenced Mr. Johnson to imprisonment for two years on Count One and to a suspended sentence on Count Two; the court also imposed a $5,000 fine. This appeal followed.
 
 II
 
 5
 * Mr. Johnson sought to have the district court dismiss the indictment because of the following alleged improprieties in the conduct of the grand jury proceedings: (1) FBI Special Agent W. Conley Carter offered hearsay testimony to the grand jurors, even though first-hand witnesses were available; (2) some of the testimony offered by Agent Carter was false or misleading; and (3) the prosecutor, Ms. Jimmie Lynn Ramsaur, improperly cut off certain questions posed by the grand jurors.
 
 
 6
 It is well settled that "[d]ismissal of a grand jury indictment is appropriate only where a defendant can establish a long standing pattern of prosecutorial misconduct before a grand jury and actual prejudice." United States v. Castro, 908 F.2d 85, 89 (6th Cir.1990). Indeed,
 
 
 7
 "there is to be 'strict application' of the rule against inquiry into grand jury processes except where it is alleged that the body is 'biased or illegally constituted.' 'Bias,' as used in Costello [v. United States, 350 U.S. 359 (1956) ], only 'refers to a grand jury which is predisposed in one way or another....' A claim that the grand jury becomes biased because the prosecutor presented evidence which an appellant considers inadequate or incompetent 'cannot be reconciled with the Supreme Court's holding' in Costello." United States v. Powell, 823 F.2d 996, 1001 (6th Cir.) (citations omitted), cert. denied, 484 U.S. 969 (1987).
 
 
 8
 Because there was no showing here of "a long standing pattern of prosecutorial misconduct," Castro, 908 F.2d at 89, the district court did not err in denying the motion. See also United States v. Nembhard, 676 F.2d 193, 200 n. 4 (6th Cir.1982) (court "need not reach" the issue of whether a government agent deliberately misled the grand jury if the defendant has shown no "long-standing misconduct before grand juries in this district").
 
 B
 
 9
 Mr. Johnson contends next that the evidence adduced at trial was insufficient to sustain his convictions. As this court explained in United States v. Tilton, 714 F.2d 642, 645-646 (6th Cir.1983),
 
 
 10
 "[a] jury conviction must be sustained if there is substantial evidence on the record to support it. In making this determination, an appellate court must view all the evidence in the light most favorable to the government, resolve all inferences which may reasonably be drawn from the evidence in the government's favor and resolve all conflicts in the testimony in the same way. If, under such a review, there is sufficient competent evidence on the record to justify a rational juror's conclusion that every element of the offense has been established beyond a reasonable doubt, the conviction must be affirmed." (Citations omitted.)
 
 
 11
 With regard to circumstantial evidence, "the established rule of this circuit is that a finding of guilt may be based on circumstantial evidence which does not 'remove every reasonable hypothesis except that of guilt.' " United States v. Van Hee, 531 F.2d 352, 358 (6th Cir.1976) (quoting United States v. Dye, 508 F.2d 1226, 1231 (6th Cir.1974), cert. denied, 420 U.S. 974 (1975)).
 
 
 12
 The jury found in this case that Mr. Johnson had violated 18 U.S.C. Sec. 657. That statute provided as follows:
 
 
 13
 "Whoever, being an officer, agent or employee of or connected in any capacity with ... [any] savings and loan corporation or association authorized or acting under the laws of the United States or any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation[,] ... embezzles, abstracts, purloins or willfully misapplies any moneys, funds, credits, securities or other things of value belonging to such institution, or pledged or otherwise intrusted to its care, shall be fined not more than $5,000 or imprisoned not more than five years, or both...."[1]
 
 
 14
 Mr. Johnson claims that the jury did not have sufficient evidence to find that he had "misapplied" funds or that the misapplication, if any, was "willful." We are not persuaded.
 
 
 15
 This court has held that a "misapplication" of funds occurs whenever "the defendant, at least temporarily, deprive[s] the bank of possession, control or use of its funds." United States v. Woods, 877 F.2d 477, 480 (6th Cir.1989). Such a misapplication is "willful," moreover, "whenever the officer acts knowingly or with reckless disregard of the bank's interests." Id.
 
 
 16
 Evidence was presented in the case at bar to show that on June 18, 1984, Mr. Johnson caused $448,000 to be transferred from Magnolia Federal Savings & Loan Association to First Independent Holding Corporation, a Tennessee corporation incorporated by the defendant; that most of the $448,000 was used to pay for Treasury bills purchased by the defendant in the name of First Independent; that the Treasury bills were subsequently resold for $445,000; and that $400,000 of this amount was then transferred back to Magnolia Federal, leaving it with a $48,000 loss.
 
 
 17
 Evidence was also presented to show that on June 29, 1984, Mr. Johnson transferred $150,000 from Magnolia Federal to First Independent,[2] and that he used this money (1) to purchase a house that he had previously owned but which, as a result of foreclosure, was then owned by Security Federal Savings & Loan, and (2) to pay off a personal loan he had received from Security Federal.
 
 
 18
 Viewing the evidence in the light most favorable to the prosecution, a rational jury could easily find Mr. Johnson guilty of the crimes charged in the indictment.
 
 C
 
 19
 Mr. Johnson moved for a mistrial on the grounds (1) that the prosecution violated the Jencks Act, 18 U.S.C. Sec. 3500, by failing to make timely disclosure of the existence of a "302 statement" summarizing an FBI interview with witness Albert Archibald, and (2) that the statement should not have been admitted into evidence. The district court did not err in declining to grant a mistrial.
 
 
 20
 The statement did not come within the terms of the Jencks Act. The act specifically requires that the statement be "signed or otherwise adopted or approved" by the witness who made it, 18 U.S.C. Sec. 3500(e)(1), and Mr. Johnson offered no proof that the statement was adopted or approved by Mr. Archibald.
 
 
 21
 Production of the statement might have been required under Brady v. Maryland, 373 U.S. 83 (1963), which "imposes a general obligation upon the government to disclose evidence that is favorable to the accused and material to guilt or punishment," United States v. Frost, 914 F.2d 756, 771 (6th Cir.1990), but it is well settled that "if the government does fail to disclose Brady material, the defendant has a constitutional remedy for the nondisclosure only if the defendant can show that there is a reasonable probability that 'the omission deprived the defendant of a fair trial.' " Id. (emphasis in original) (quoting United States v. Agurs, 427 U.S. 97, 108 (1976)). In the case at bar the untimely disclosure of the 302 statement did not deprive Mr. Johnson of a fair trial, the district court having recalled Mr. Archibald to allow the defendant to cross-examine him about the statement's content.
 
 
 22
 As to Mr. Johnson's claim that the district court erred in admitting the 302 statement into evidence, the record discloses that his attorney said he would be "perfectly satisfied" [sic] to allow the jury to read the 302 statement. It is well settled that "[a]n attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course." United States v. Sloman, 909 F.2d 176, 182 (6th Cir.1990).
 
 D
 
 23
 Mr. Johnson complains, finally, about certain questions asked by the district judge. Because Mr. Johnson failed to raise any objection at trial, "reversal is required only ... [if] necessary to avoid a miscarriage of justice." United States v. Hatchett, 918 F.2d 631, 643 (6th Cir.1990). Nothing in the judge's questions suggests a pro-Government bias rising to the level of a "miscarriage of justice." Mr. Johnson is not entitled to a reversal on this ground.
 
 III
 
 24
 This court's local rules provide, in pertinent part, as follows:
 
 
 25
 "A motion to withdraw as counsel on appeal in a criminal case must state the reasons for such relief and be accompanied by one of the following:
 
 
 26
 (1) a showing that new counsel has been retained to represent defendant, together with a signed appearance by new counsel; or,
 
 
 27
 (2) an affidavit or signed statement from the defendant showing that the defendant has been advised of the defendant's rights with regard to the appeal and expressly stating that the defendant elected to withdraw the appeal; or,
 
 
 28
 (3) [a] brief following the procedure described in Anders v. California, 386 U.S. 738 (1967). Counsel shall serve a copy of the brief and motion on the defendant and advise the defendant that the defendant has twenty-one (21) days from the date of service in which to file a brief in support of reversal of the conviction. Such a motion must be accompanied by proof of service on the defendant." Sixth Circuit Rule 12(d).
 
 
 29
 None of these three alternatives has been met in the case at bar.
 
 
 30
 Accordingly, the motion to withdraw is DENIED. The defendant's conviction is AFFIRMED.
 
 
 
 *
 The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 18 U.S.C. Sec. 657 was amended on August 9, 1989, to provide for a maximum fine of $1,000,000 and a maximum period of incarceration of 20 years. See the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. 101-73, Sec. 961(c), 103 Stat. 183, 499 (1989)
 
 
 [2]
 Despite representations made at oral argument, we find no evidence in the record that First Independent gave Magnolia Federal a note for the $150,000