UNITED STATES of America,
Plaintiff–Appellee,

v.

Paul W. WOODS, Defendant–Appellant.

No. 88–1227.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 18, 1988.

Decided June 13, 1989.

Thomas O. Martin, and Janice Kittel Mann (argued), U.S. Attorney's Office, Grand Rapids, Mich., for U.S.

Marilyn S. Nickell, J. Terrance Dillon (argued), Dykema, Gossett, Spencer, Goodnow & Trigg, Grand Rapids, Mich., for Paul W. Woods.

Before JONES and NORRIS, Circuit Judges; and BROWN, Senior Circuit Judge.

PER CURIAM.

Paul W. Woods, former President of the federally insured Branch County Bank, appeals his conviction for willful misapplication of bank funds under 18 U.S.C. § 656. The indictment charged him with making and concealing unauthorized loans to himself, as follows:

> PAUL W. WOODS, defendant herein, being an officer and employee, that is, President of the Branch County Bank (BCB), the deposits of which bank were insured by the Federal Deposit Insurance Corporation (FDIC), did, with intent to injure and defraud the said BCB, willfully and knowingly misapply and convert to his own use TWENTY ONE [sic] THOUSAND THREE HUNDRED EIGHTY-FIVE ($21,385.00) Dollars of the monies, funds and credits of the BCB by making and causing to be made a loan totalling such amount, by executing an Installment Loan Agreement dated July 26, 1983 in the name of Richard King, ... when in truth and fact, as PAUL W. WOODS then well knew he was to receive the proceeds from the loan.

The parties stipulated that the bank was insured by FDIC and that Woods was an officer of the bank at the time he authorized the installment loan to King. He signed King's name on the loan agreement which listed King's address as "c/o C & F

Vending." Woods had a business interest in C & F; King had no such interest and did not use that address.

The bank's rules limited unsecured loans to its executive officers to a maximum of $25,000, but prohibited them from making loans to themselves without approval from the board of directors. Individuals other than the bank's officers could obtain unsecured loans to a maximum of $75,000. Woods was authorized to approve loans and each renewal was required to be a new loan.

For many years, the bank had provided financing to King. Woods handled the transactions and signed the required notes under an oral "power of attorney." In 1981, King agreed to loan $3,000 to $5,000 to Woods, who had said that he needed the money to help C & F. Their understanding was that King would borrow the money from the bank and that Woods would follow their usual custom and sign King's name under the power of attorney. Woods told King that it would be difficult for him to go to the bank's board of directors to obtain a loan, and also that he did not want his wife to know that he was loaning money to C & F.

Over the next several years, and without the knowledge or consent of King, Woods executed a number of notes in King's name. When King discovered that a balance of $50,000 to $60,000 was outstanding, he told Woods that he had borrowed enough and should start paying off the notes. Woods explained that C & F needed more money than he had originally thought, and voluntarily gave King collateral for the loan. King testified that he knew Woods might need to renew the notes.

King neither made payments on the loans nor included the interest as a deduction on his personal income tax returns. He gave Woods the federal tax forms he had received from the bank, noting the amount of interest paid. One of the bank's witnesses expressed the opinion that both Woods and King had the financial ability to pay up to $75,000 worth of unsecured per-

sonal loans, and, in fact, Woods did pay the loans within five days after his resignation.

This appeal involves only the sixty-month installment loan agreement in the amount of $21,385, dated July 26, 1983. The bank's records show prepayment on the following day of a sixty-month installment loan in King's name for $27,000, dated October 2, 1981.

Woods was also indicted and tried upon two other counts with respect to two other notes. The trial court dismissed those counts, reasoning that the bank had not lost any control, possession, or use of the funds, even temporarily, since the notes were merely renewal notes. However, the court refused to dismiss this count because it concluded that the bank had suffered a temporary loss of control over its funds during the one-day interval when both loans were outstanding.

On appeal from a criminal conviction, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Moreover, every reasonable inference from the evidence must be drawn in the government's favor. *United States v. Cooperative Theatres of Ohio, Inc.*, 845 F.2d 1367, 1373 (6th Cir.1988). The evidence need not exclude every logical hypothesis other than guilt. *United States v. Green*, 548 F.2d 1261, 1266 (6th Cir.1977).

The crime of willful misapplication of bank funds is defined at 18 U.S.C. § 656, as follows:

> Whoever, being an officer, director, agent or employee of [any insured bank], embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

In order to establish the crime, "the Government must show ... that the defendant acted willfully, that he misapplied funds, moneys, or credits belonging to or intrusted to the custody of the bank and that he did so with the intent to injure or defraud the bank." *United States v. Duncan*, 598 F.2d 839, 858 (4th Cir.), *cert. denied*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed. 2d 96 (1979). The intent to injure or defraud is required, despite its absence from the statutory language. *Id.; Logsdon v. United States*, 253 F.2d 12, 14–15 (6th Cir. 1958).

Woods argues that the evidence was insufficient to show that the bank was injured because there was only a paper transaction, a matter of form and not of substance, which effected no change in the bank's financial status. In essence, he suggests that he has not misapplied bank funds as required by the statute, contending that section 656 only applies to a misapplication which is analogous to an offense of fraud or theft. Similarly, relying upon *United States v. Gens*, 493 F.2d 216 (1st Cir.1974), he contends that the jury should have been instructed that a bank can sustain no injury where it makes a loan to a responsible party who is financially capable of paying it off and understands his repayment obligation. That contention is without merit since, as the trial judge correctly noted, this case bears little resemblance to the factual circumstances that were critical to the holding in *Gens*. Moreover, we believe the better rule, and the one most in line with the language of the statute and sound reasoning, is set forth in *United States v. Krepps*, 605 F.2d 101, 108 (3d Cir.1979):

> [A] willful misapplication in violation of § 656 is established when a bank officer secures a loan for himself by having the bank lend money to a named debtor who then transfers the funds to him, even when the named debtor is financially capable and [fully] understands that it is his legal responsibility to repay the loan.

*Id.* at 108; *see also United States v. Shively*, 715 F.2d 260, 265–66 (7th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1001, 79

L.Ed.2d 233 (1984) (bank placed in serious jeopardy of violating the legal limits on lending to its officers); *United States v. Twiford,* 600 F.2d 1339, 1341–42 (10th Cir. 1979) (quoting *United States v. Cooper,* 464 F.2d 648, 651–52 (10th Cir.1972), *cert. denied sub nom. Salazar v. United States,* 409 U.S. 1107, 93 S.Ct. 901, (1973)) (in both cases, the defendants were receiving the benefit of loans without disclosing them); *United States v. Rickert,* 459 F.2d 352, 354–55 (5th Cir.1972) (debit and credit machinations violated section 656, even if no cash left the bank).

Authorities from the Second and Ninth Circuits also support the district court's refusal to give the requested *Gens* intruction. *United States v. Clark,* 765 F.2d 297 (2d Cir.1985); *United States v. Unruh,* 855 F.2d 1363, 1371 (9th Cir.1987), *cert. denied sub nom. Forde v. United States,* — U.S. ——, 109 S.Ct. 513, 102 L.Ed.2d 548 (1988); *United States v. Kennedy,* 564 F.2d 1329 (9th Cir.1977), *cert. denied sub nom. Myers v. United States,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978).

■ It is sufficient that the defendant, at least temporarily, deprived the bank of possession, control or use of its funds, and, therefore, proof of actual gain to the defendant, or loss to the bank, is not required. *Duncan,* 598 F.2d at 858. Contrary to Woods' first argument, then, the bank did part with control of its funds. Two loans were clearly outstanding for a period of approximately twenty-four hours. Surely, had the bank been examined on the date of the new loan, both loans would have been charged to the bank's loan accounts. Also, as a result of the extended time for paying the renewal loan, the bank was effectively deprived, without its consent, of control over its funds for an additional twenty-two months. That deprivation of control is sufficient to constitute misapplication of bank funds whithin the context of section 656.

■ Woods next contends that he did not act with the requisite intent to defraud the bank. This court has previously noted that misapplication of funds means, at the very least, a deceitful and dishonest mishandling of a bank's monies, funds, or credits, and that an intent to injure or defraud a bank can be inferred from the facts and circumstances adduced at trial. *United States v. Franklin,* 608 F.2d 241, 244 (6th Cir.1979); *see also United States v. Cooper,* 577 F.2d 1079, 1085 (6th Cir.), *cert. denied,* 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978). Such intent exists whenever the officer acts knowingly or with reckless disregard of the bank's interests and the result of his conduct injures or defrauds the bank. *Franklin,* 608 F.2d at 244.

Recently, this court stated that "[w]here a bank officer arranges loans for a named borrower, intending that the proceeds will benefit himself, and without disclosing his interest in the loan transaction, he has acted in a deceitful and dishonest manner." *United States v. Walker,* 871 F.2d 1298, 1307 (6th Cir.1989) (finding *Krepps* more compatible than *Gens* with this court's previous authority). Although the crime at issue in *Walker* was bank fraud in violation of 18 U.S.C. §§ 371, 1344, the court noted that the requisite intent to defraud is the same as for willful misapplication of bank funds under section 656. *Id.* at 1305 n. 67. We believe that *Krepps* properly sets forth the requisite mental state to establish a section 656 violation. In a case such as this, "the very existence of a mediated transaction demonstrates that the bank officer had the measure of criminal intent needed to establish a willful misapplication of bank funds." *Krepps,* 605 F.2d at 108. We therefore conclude that there was substantial evidence to support the jury's guilty verdict.

■ Woods also argues that there was an impermissible variance between the proof and the indictment; that is, the indictment charged him only with converting funds to his own use and the proof did not show that he received any funds. He therefore argues that the court erred by instructing the jury that it could find him guilty if he had converted funds either for his own benefit or for the benefit of some other person. Under the statute, however, it is irrelevant who benefits from the misapplication of bank funds. *United States*

*v. Mouton,* 617 F.2d 1379, 1385–86 (9th Cir.), *cert. denied,* 449 U.S. 860, 101 S.Ct. 163, 66 L.Ed.2d 77 (1980). Accordingly, that portion of the indictment charging Woods with converting funds to his own use, being a non-essential element of the crime under section 656, was mere surplusage.

■ Because he was responsible for raising "other acts" evidence through his cross-examination of a prosecution witness, Woods suggests that the court erred by giving, *sua sponte,* an other acts instruction under Fed.R.Evid. 404(b). The court instructed the jury that it could consider other acts of a similar nature on the part of the accused in determining the state of mind or intent with which he acted. Upon cross-examination, Woods elicited the evidence from King that he had previously authorized Woods to sign his name on loan documents. That was done in an effort to persuade the jury that he acted without any intent to injure or defraud the bank.

A party cannot complain simply because his evidence turns out to be favorable to the government's case. We have held that it is appropriate and within the discretion of the trial judge to give, *sua sponte,* a proper charge under Fed.R.Evid. 404(b) where relevant evidence of similar acts has been introduced. *Cooper,* 577 F.2d at 1086–89. The trial court's instruction properly limited the jury's use of the evidence against him, and the jury was free to draw inferences in his favor.

■ The trial court instructed the jury that it must find Woods not guilty if it found that he "reasonably and in good faith believed that the transactions charged in the indictment were legal, and [it found] that he did not act with the intent to injure or defraud the bank." Woods objects to the use of "reasonably" in that instruction.

Actually, the instruction erred in Woods' favor, insofar as it instructed the jury that Woods' belief in the legality of the transaction was a defense. It is hornbook law that a defendant's belief that his conduct is not proscribed by criminal law is generally not a defense. W. LaFave & A. Scott, Jr., *Criminal Law* § 47 (1972). Nevertheless,

[i]gnorance or mistake as to a matter of fact or law is a defense if it negatives a mental state required to establish a material element of the crime, except that if the defendant would be guilty of another crime had the situation been as he believed, then he may be convicted of the offense of which he would be guilty had the situation been as he believed it to be.

LaFave, *supra,* § 47. Here, however, there is no evidence in the record that indicates that Woods had any reasonable good faith belief that would constitute a defense to the offense charged.

The judgment of the district court is affirmed.