**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Thomas A. CHRISTIAN (90–6326), and Clifford B. Friend, also known as Pookie (90–6587), Defendants–Appellants.**

**Nos. 90–6326, 90–6587.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 1, 1991.

Decided Aug. 19, 1991.

364

John W. Gill, Jr., U.S. Atty., Michael Winck, Asst. U.S. Atty. (argued), Knoxville, Tenn., Steven H. Cook, Asst. U.S. Atty. (briefed), Chattanooga, Tenn., for U.S.

Thomas J. Wright (argued and briefed), Dietzen, Atchley & Wright, Chattanooga, Tenn., for Thomas A. Christian.

Larry D. Wolfe (argued and briefed), Atlanta, Ga., for Clifford B. Friend.

Before MARTIN and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

The events that lead to the arrest of Thomas Christian and Clifford Friend began with the Tennessee Bureau of Investigation's arrest of David Gillespie. Not knowing Gillespie had been arrested, Christian arranged a cocaine deal involving Gillespie, Friend and others. The transaction, videotaped and monitored by undercover agents, took place on the night of March 8, 1990. Following his arrest, Friend plead guilty to conspiracy to distribute and to possess with the intent to distribute cocaine. Christian was convicted by a jury for (1) conspiracy to distribute cocaine and to possess cocaine with the intent to distribute, (2) attempting to possess with the intent to distribute 500 grams of a mixture or substance containing cocaine, (3) travel in interstate commerce to facilitate unlawful activity, and (4) aiding and abetting another conspirator in his use of a firearm. He appeals his conviction on count four. Friend appeals the sentence imposed by the district court. For the reasons that follow, we affirm the judgments of the district court as to both.

On March 7, 1990, Gillespie met with Special Agents Butch Morris and Joe Copeland, who were posing as cocaine dealers capable of supplying kilogram quantities. Gillespie negotiated a purchase of one kilogram of cocaine and was immediately arrested.

Gillespie told the undercover agents after his arrest that Christian was to distribute the one kilogram of cocaine. Under the direction of Agent Copeland, Gillespie spoke with Christian in a series of tape recorded telephone calls. Christian said he had been attempting to contact Gillespie because he found some more people wanting to buy cocaine. These people turned out to be Friend, Roderick Stafford, and Jaques Grant. Gillespie told Christian to contact these individuals and arrange a transaction.

Christian contacted Stafford and together they negotiated with Gillespie by telephone throughout the day arranging the transaction. Between 10:00 and 10:30 p.m., Friend, Stafford and Grant left Atlanta for Chattanooga to conduct the transaction while Christian and his wife went in a separate vehicle. After the group rejoined at a motel in Tennessee, Christian and his wife led Friend, Stafford, and Grant to a separate motel where Gillespie was waiting.

Christian, Stafford and Friend went to Gillespie's motel room while Grant and Christian's wife waited in the cars at the motel parking lot. Grant had $60,000 in his car and a nine millimeter pistol under his car seat.

The Tennessee Agents secretly videotaped the meeting between Friend, Stafford, Christian, and Gillespie. The videotape shows Gillespie and Friend agreeing to conduct the transaction for three kilograms one kilogram at a time. Undercover Special Agent Byler brought one kilogram of cocaine into the room. Friend took it and tested it. Gillespie asked how many kilograms they would want per week and Stafford responded "whatever you've got," adding he and Friend could earn Christian and Gillespie $100,000 in profit per week.

After Friend and Stafford tested the cocaine, they continued to discuss future transactions with Gillespie. Friend stated they would probably call tomorrow because they could move the three kilograms in one day. Gillespie and Byler proposed possibly supplying around ten kilograms of cocaine per week. Friend responded, "I tell you what'll ... make you'all happy—first two-three weeks we'll come at about five a week." After further discussion, Stafford left the room and went to their car. He sat in the passenger seat next to Grant, counted $20,000 out of the $60,000, and returned to the room with the money.

Shortly after Stafford's return to the room, the undercover agents arrested Stafford, Friend, and Christian. Agents then arrested Grant, who told the officers of the gun under his seat.

On March 13, 1990, a federal grand jury returned four count indictments against Christian, Friend, Stafford and Grant. The

first three counts charged them each with: (1) conspiracy to distribute and to possess with the intent to distribute cocaine; (2) attempting to possess with the intent to distribute 500 grams of a mixture or substance containing cocaine; and (3) travel in interstate commerce to facilitate unlawful activity. The fourth count against each defendant charged that Grant, aided and abetted by Stafford, Friend, and Christian, used a firearm in relation to the drug offense.

Friend, Stafford and Grant pled guilty to count one in exchange for the dismissal of the remaining counts. Christian went to trial on May 9, 1990, and on May 10 the jury found Christian guilty on all four counts. Christian and Friend filed this timely appeal.

Christian presents five arguments in support of his claim that he should not have been found guilty of aiding and abetting in Grant's use of a firearm. First, Christian asserts that there was insufficient evidence to support the finding that Grant was a member of the conspiracy to distribute cocaine and to possess the cocaine with the intent to distribute; thus, he should not have been found guilty for aiding and abetting in the use of a firearm. Christian relies primarily upon the trial testimony of Roderick Stafford who repeatedly claimed Grant had no part in the deal.

█ When reviewing a denial of a motion to dismiss, the court must consider all the evidence in a light most favorable to the government. *United States v. Walton*, 908 F.2d 1289, 1294 (6th Cir.1990), *cert. denied*, ⸺ U.S. ⸺, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990). This standard is the same for direct and circumstantial evidence. *United States v. Seltzer*, 794 F.2d 1114, 1119 (6th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 979 (1987). Every reasonable inference from the evidence must be drawn in the government's favor. *United States v. Woods*, 877 F.2d 477, 479 (6th Cir.1989).

█ Though Grant was not involved in the actual negotiations for the cocaine, he drove Stafford and Friend to the meeting with the car salesman, Clark. He also drove Stafford and Friend from Atlanta to Chattanooga and followed Christian and Christian's wife to the hotel where Gillespie was waiting. Grant waited in the car while Stafford and Friend arranged the deal in Gillespie's room, and he sat next to Stafford in the car when Stafford counted out $20,000 for the first kilogram of cocaine. Grant also told the arresting officers of the firearm under his seat at the time of his arrest. This aggregation of evidence is sufficient for a reasonable jury to find beyond a reasonable doubt that Grant was involved in the conspiracy.

█ Second, Christian asserts that the evidence was insufficient to support the finding that Grant knowingly and willfully used the nine millimeter semiautomatic pistol during and in relation to the drug transaction, violating 18 U.S.C. § 924(c)(1). He bases this argument on Stafford's testimony that Grant was unaware of the gun and, again, that Grant was not involved in the drug transaction. He also argues that the firearm must have been within reach during the commission of the drug offense and that it was not.

This circuit has ruled that "[s]ection 924(c)(1) reaches the possession of a firearm which in any manner facilitates the execution of a felony." *United States v. Acosta–Cazares*, 878 F.2d 945, 952 (6th Cir. 1989) (quoting *United States v. LaGuardia*, 774 F.2d 317, 321 (8th Cir.1985), *cert. denied*, ⸺ U.S. ⸺, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989)). " '[U]ses' . . . should be construed broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions." *Id.*

Grant's actions satisfy the requirement for this broad test. The transaction began when Grant drove to the meeting with car salesman Clark, who introduced them to Christian; the transaction continued as Grant drove to Chattanooga to meet with Gillespie and as he sat next to Stafford when Stafford counted out $20,000 for the first kilo. Grant himself told the arresting officers of the gun under his car seat. These facts combined with the fact that

$60,000 was also in the car, create a sufficient basis for a reasonable jury to find that Grant was a drug dealer who willfully and knowingly had ready access to the gun during a drug transaction.

■ Third, Christian asserts that because he was charged with "unlawfully" using a firearm, his conviction under section 924(c) should be reversed. Christian argues that because 'unlawful' is not an element of section 924(c) and because no evidence was presented to prove Grant unlawfully used the weapon at issue, he was wrongly convicted for aiding and abetting Grant under 924(c).

This circuit confronted a similar issue in *United States v. Woods,* 877 F.2d 477 (6th Cir.1989); the defendant was charged with converting bank funds for his own use, yet no proof was entered showing he received the funds. The court upheld the conviction because it was irrelevant who benefitted from the converted funds under the statute and "the portion of the indictment charging [the defendant] with converting funds to his own use ... was mere surplusage." *Id.* at 481. The same rationale applied in *Woods* applies here. Unlawfulness is not an element of 924(c). The conviction based upon proof of the elements comprising section 924(c) will not be set aside because of an excess allegation in the complaint unless that allegation in some way prejudices the defendant—in this case there was no prejudice; the use of "unlawfully" in the indictment was mere surplusage.

■ Fourth, Christian asserts that he cannot be held liable under the *Pinkerton* doctrine for aiding and abetting Grant's use of the firearm, the fourth count in Christian's indictment. Christian contends that the plain language of 21 U.S.C. § 846, the conspiracy provision under which he was convicted, precludes liability under another title or subtitle; the section states:

> Any person who ... conspires to commit any offense *defined in this subchapter* shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the ... conspiracy.

(emphasis added). Offenses under this subchapter include the distribution of cocaine and possession of cocaine with intent to distribute. 21 U.S.C. § 841(a)(1).

The *Pinkerton* doctrine "permits the conviction of a coconspirator for the substantive offense of other coconspirators committed during and in furtherance of the conspiracy." *United States v. Martin,* 920 F.2d 345, 348 (6th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2038, 114 L.Ed.2d 122 (1991); *see Pinkerton v. United States,* 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946). It exists to punish conspirators for crimes committed by a coconspirator that are *not* the object of the conspiracy itself but are foreseeable and in furtherance of the conspiracy. *See United States v. Troop,* 890 F.2d 1393, 1399 (7th Cir.1989). Grant's access to the gun was not the object of this conspiracy. The object was to distribute cocaine and to possess cocaine with the intent to distribute. Under the *Pinkerton* doctrine, Christian could have been held liable for any crime foreseeable to him, committed by a coconspirator in furtherance of meeting that goal; that the statute under which Christian was convicted of conspiracy is limited to those offenses set out in subchapter I, Chapter 13, 21 U.S.C. is irrelevant in determining *Pinkerton* liabilities.

■ Fifth, Christian asserts his conviction for aiding and abetting Grant's possession of a firearm violates due process. He contends that the facts connecting him to Grant and then Grant to the gun are too attenuated. Other circuits have indicated that the *Pinkerton* doctrine might be limited by the due process clause because of a strained relationship between the conspirator and the substantive crime. *See United States v. Johnson,* 886 F.2d 1120 (9th Cir. 1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990). However, the parties have not cited nor do we find any case so limiting the *Pinkerton* doctrine.

The foreseeability concept underlying *Pinkerton* is also the main concern underlying a possible due process violation. Giv-

en that "[s]ection 924(c)(1) reaches the possession of a firearm which in any manner facilitates the execution of a felony," *United States v. Acosta–Cazares*, 878 F.2d at 952 (quoting *United States v. LaGuardia*, 774 F.2d 317, 321 (8th Cir.1985)), and that " 'uses' . . . should be construed broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions," *Id.*, foreseeability is not too attenuated in this case. The "well recognized nexus between drugs and firearms," *United States v. Golter*, 880 F.2d 91, 94 (8th Cir.1989), is acknowledged in this instance where parties, who had never dealt with each other before, agreed to exchange $60,000 for three kilograms of cocaine.

■ Clifford Friend appeals three issues concerning the district court's application of the Federal Sentencing Guidelines. First, Friend asserts the court erroneously included ten kilograms in the negotiated for quantity of cocaine used to establish the base offense level under section 2D1.1. United States Sentencing Commission, *Guidelines Manual*, § 2D1.1. Friend contends there was no evidence he was capable of purchasing the two five kilogram amounts he negotiated for and, thus, they should have been excluded from the calculation. *See Guidelines Manual*, § 2D1.4 comment. (n. 1) ("[W]here the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing."). Friend bases this argument on the testimony of Roderick Stafford who asserted he "coached" Friend to act like a dope dealer in exchange for a few hundred dollars.

This circuit has previously ruled that once the government satisfies its burden in establishing a negotiated amount, the defendants have the burden of proving that they were not capable of producing that amount. *United States v. Rodriquez*, 896 F.2d 1031, 1033 (6th Cir.1990).

The burden of proof is ordinarily placed on the party who benefits from the establishment of a fact. Moreover, mitigating circumstances are more likely to be within the defendant's knowledge than the government's. They may require the defendant's testimony which the government may not be able to compel.

*Id.* The videotape of the exchange shows Friend repeatedly boasting of the ability to quickly sell kilogram quantities of cocaine and that his only problem is getting a consistent supply. It also shows Friend take and test the kilo of cocaine brought into the room by Agent Byler. Because of this powerful evidence, we do not believe the district court was clearly erroneous in rejecting Stafford's testimony and including ten kilograms in the Sentencing Guidelines calculation.

■ Friend also asserts that the district court erred by declining to reduce his sentence to reflect mitigating circumstances. He basically contends that compared to the sentences received by Stafford, Christian, and Grant, his sentence is improper. The only question before the court is whether the district court erred in its application of the Sentencing Guidelines to Friend's case. Friend cites no facts or cases supporting his assertion that it did.

■ Lastly, Friend argues the district court erred by making a two-level enhancement under Sentencing Guidelines § 2D1.1(b)(1) for the presence of a firearm. He contends the gun under Grant's car seat "was neither within the scope of the agreement, nor . . . reasonably foreseeable in connection with the activity." *Guidelines Manual*, § 1B1.3, comment. (n. 1). Under the foreseeability analysis applied to Christian, we believe Grant's ready access to the gun was foreseeable to Friend.

For the foregoing reasons, we affirm the judgments of the district court.