992 F.2d 1218
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
George FISHER, III and Charlene Redmond, Defendants-Appellants.
 Nos. 92-5817, 92-5843.
 United States Court of Appeals, Sixth Circuit.
 April 5, 1993.
 
 Before GUY and BOGGS, Circuit Judges, and BELL, District Judge.*
 PER CURIAM:
 
 
 1
 Charlene Redmond and George Fisher appeal their convictions and sentencing for charges arising out of an alleged drug conspiracy involving the two appellants and Joyce Ann Hughett. We affirm.
 
 
 2
 * A
 
 
 3
 All three alleged coconspirators lived in Bell County, Kentucky. Hughett was apparently the instigator of the conspiracy and has a history of selling marijuana and cocaine. Charlene Redmond is Hughett's twenty-five-year-old daughter, and Fisher is Redmond's twenty-year-old fiancee. Fisher inherited several small businesses and rental properties from his father, including a video arcade and a paging business. At the time of her arrest, Redmond was working part-time in Fisher's businesses and attending a local community college. Hughett lived in a cabin in the hills, accessible only by a jeep trail. When Hughett wanted to go anywhere, she would contact Redmond or Fisher to pick her up and walk the half mile to meet them at the main road.
 
 
 4
 Redmond and Fisher were charged with conspiracy to possess cocaine with intent to distribute and distribution of cocaine, in violation of 21 U.S.C. § 846. In addition, Fisher was charged with five counts of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. In three of the five distribution counts he was named as a principal and in two he was named as an aider or abettor. Redmond was charged with four counts of aiding and abetting the distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Hughett was also named in the indictment, but her case is not before us.
 
 
 5
 Fisher pleaded guilty to Count One (conspiracy), and the five distribution counts were dismissed. On June 15, 1992, Fisher was sentenced to 72 months in prison, to be followed by five years of supervised release.
 
 
 6
 Redmond's case went to trial. The jury found her guilty of Count One (conspiracy) and Count Four (aiding and abetting). The jury found Redmond not guilty of the remaining charges of aiding and abetting--Counts Two, Three, and Six. On June 15, 1992, Redmond was sentenced to 15 months in prison, to be followed by five years of supervised release.
 
 B
 
 7
 This case arose out of an undercover operation that began in April 1991, when Adam Redman, Hughett's cousin, agreed to cooperate with the FBI in an investigation of cocaine dealing in Bell County. Over the next few months, Redman engaged in at least five drug transactions (the underlying offenses in counts two through six) with the defendants, some of which were recorded or observed by FBI agents and Kentucky State Police Officer Thomas McKnight. The facts for each of these drug transactions, as presented at Redmond's trial, were as follows.
 
 1. Count Two
 
 8
 On April 12, 1991, Redman met Hughett in the Dairy Queen parking lot, where he purchased $1,800 of cocaine. Hughett arrived in a Dodge truck driven by Fisher and accompanied by Redmond. Hughett got out of the Dodge and went into Redman's car to execute the deal. Hughett exchanged the cocaine, which was hidden in her pants, for $1,800 in a white envelope. During the transaction, Redmond remained in the Dodge, which was six feet away, and Fisher made a phone call at a telephone booth. The jury found Redmond not guilty on this count.
 
 2. Count Three
 
 9
 On April 25, 1991, Officer McKnight purchased cocaine from Hughett on the back porch of Redman's house. Again, Fisher and Redmond accompanied Hughett, but remained in the car, approximately twenty to twenty-five feet away from the transaction. In a taped conversation, Hughett agreed to pay Redman $200 for arranging the deal with McKnight. The following day, Redmond came to Redman's house alone and delivered two $100 bills. The jury found Redmond not guilty on this count.
 
 3. Count Four
 
 10
 Shortly thereafter, Hughett went to the city jail to serve ninety days for a previous conviction for dealing marijuana. Before she went to jail, Hughett told Redman in a taped conversation that he could do business with Redmond and Fisher. McKnight arranged to buy two ounces of cocaine for $3400 from Fisher in the Wal-Mart parking lot on May 2, 1991. The transaction took place in McKnight's car. Redmond remained in Fisher's car, a convertible, about six feet away. Fisher and Redmond delivered a pager and $200 to Redman at his house on May 3, 1991. The jury found Redmond guilty of aiding and abetting this transaction.
 
 4. Count Five
 
 11
 Redman bought a half ounce of cocaine for $800 from Fisher at Fisher's residence. Redmond was not present during this transaction and was not charged.
 
 5. Count Six
 
 12
 On May 30, 1991, McKnight arranged to meet Fisher at a motel around 2:00 a.m. to buy $33,000 worth of cocaine. Fisher was arrested in the motel room with the cocaine and scales. Redmond remained in the car during this transaction. The jury found Redmond not guilty on this count.
 
 
 13
 Redmond took the stand in her own defense. She admitted that she knew her mother dealt marijuana and that she was suspicious that Fisher might be dealing marijuana as well; however, she denied any knowledge of cocaine trafficking by either of her alleged coconspirators. She admitted she was in the car during the drug transactions, but denied any knowledge of the drug transactions. She claimed that she was present at the transactions involving her mother because her mother was dependent on her for transportation. Redmond explained that she delivered $200 to Redman on April 26, 1990 at her mother's request and that she thought her mother was simply providing a loan to Redman while he was down on his luck. Finally, she explained that she accompanied Fisher at 2 a.m. on the night of the arrest because she did not want Fisher to give two teenage girls a ride home from his video arcade alone. Redmond claimed that she did not notice the suitcase in the back seat, containing the crack cocaine and the scales, until after the girls had been dropped off.
 
 II
 
 14
 Fisher contends that the district court sentenced him harshly because he is male. He presents no evidence to support this charge other than a comparison to the sentences received by his female coconspirators. The court, however, did not even give Fisher the maximum sentence within the appropriate sentencing range, sentencing him to 72 months of imprisonment, when the range was 63 to 78 months. Regardless, if the district court properly computed the guideline range, was aware of its discretion to depart downward, and did not impose the sentence in violation of the law or as a result of the incorrect application of the sentencing guidelines, then we will not disturb the sentence. See United States v. Chalkias, 971 F.2d 1206, 1218 (6th Cir.1992). Fisher's only argument is that his sentence is harsher than his coconspirators. This disparity, standing alone, does not constitute an abuse of discretion. United States v. Christian, 942 F.2d 363, 368 (6th Cir.1991), cert. denied, 112 S.Ct. 905 (1992). Accordingly, we affirm Fisher's conviction and sentence.
 
 III
 
 15
 Redmond's primary contention is that there was insufficient evidence to support her jury conviction. Redmond faces a "very heavy" burden. United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.), cert. denied, 476 U.S. 1123 (1986). The question before us is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). "The government must be given the benefit of all inferences which can reasonably be drawn from the evidence ... even if the evidence is circumstantial." United States v. Adamo, 742 F.2d 927, 932 (6th Cir.), cert. denied, 469 U.S. 1193 (1984). In effect, for Redmond to prevail, we must find that the jury acted irrationally or, at the very least, delivered a verdict which has no rational basis.
 
 
 16
 Redmond challenges both the conspiracy conviction and the aiding and abetting conviction. To prove a drug conspiracy under 21 U.S.C. § 846, the government must prove the existence of an agreement to violate the drug laws and that each defendant knew of and participated in the conspiracy. United States v. Pearce, 912 F.2d 159, 161 (6th Cir.1990). The government need not prove a formal agreement: "a tacit or material understanding among the parties is sufficient to show a conspiracy." Ibid. An overt act need not be proven, and circumstantial evidence is sufficient. United States v. Bourjaily, 781 F.2d 539, 544 (6th Cir.1986), aff'd, 483 U.S. 171 (1987). To prove aiding and abetting in the distribution of cocaine under 21 U.S.C. § 841(a), the government must prove that Redmond acted with specific intent to facilitate the commission of a crime by another. United States v. Winston, 687 F.2d 832, 835 (6th Cir.1982). The government is not required to prove that Redmond had an interest or stake in the transaction. Id. at 834.
 
 
 17
 For both charges, mere presence at the scene of the crime and guilty knowledge of the crime are not sufficient in themselves; Redmond must be shown to have been a participant in the transaction and the conspiracy and not merely a knowing spectator. Id. at 835. On the other hand, "[a]lthough mere presence alone is insufficient to support a guilty verdict, presence is a material and probative factor which the jury may consider in reaching its decision. A defendant's guilty knowledge and voluntary participation may be inferred from surrounding circumstances." United States v. Hodges, 935 F.2d 766, 773 (6th Cir.1991) (citations and emphasis omitted, quoting United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986)).
 
 
 18
 Hughett and Fisher pleaded guilty to charges that they conspired to traffic cocaine. The government presented ample evidence that Hughett and Fisher conspired to sell and did sell cocaine, including tapes of conversation, testimony of cooperating witnesses and undercover agents, and seized cocaine and measuring scales. Redmond concedes that she was present during four drug transactions and that she knew, or at least suspected, that Hughett and Fisher were engaged in drug trafficking of some type.
 
 
 19
 The difficulty with Redmond's argument that she was "merely present" is that she was merely present at four separate drug transactions. In fact, Fisher was charged with only one count of cocaine distribution at which Redmond was not present. Upon repetition, at some point passive presence transforms into presence pregnant with meaning and can be rationally perceived by a jury as not "mere presence," but "significant presence." It is for the jury to determine the full implications of that significance, and even if this court would not draw the same inferences as the jury, this court cannot hold that the jury's verdict has no rational basis.
 
 
 20
 We believe that the government has met its burden of proof in this case. A reasonable jury could perceive Redmond's presence at four separate drug transaction as more than "mere presence" and could infer from that presence, and other facts, Redmond's knowing involvement in the drug conspiracy and transactions. In addition to the evidence of Redmond's frequent presence at the scene of the drug transactions, the government presented evidence that Redmond delivered a $200 "finder's fee" to Redman by herself. On another occasion, Redmond and Fisher delivered a pager and another $200 payment to Redman. Finally, before Hughett went to jail she instructed Redman to deal with Redmond or Fisher. After reviewing this evidence, we cannot say that the verdict has no rational basis.
 
 IV
 
 21
 In addition, Redmond raises three issues concerning the tape recordings of Hughett's and Fisher's conversations with Redman and McKnight. First, Redmond contends that the tape recordings are inadmissible hearsay. However, the tape recordings were admissible under Federal Rule of Evidence 801(d)(2)(E), which provides that:
 
 
 22
 A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in the furtherance of the conspiracy.
 
 
 23
 Redmond's contention that the taped statements were inadmissible because they were made to government agents has no merit. It is irrelevant to whom the statements were made. The relevant questions are 1) did a coconspirator make the statements, and 2) were the statements made during the course and in the furtherance of the conspiracy.
 
 
 24
 Second, Redmond argues that the recordings were erroneously admitted because the district court did not make a finding concerning the existence of a conspiracy before the admission of the recordings. However, as the Sixth Circuit explained in United States v. Vinson, 606 F.2d 149, 152 (6th Cir.1979), cert. denied, 444 U.S. 1074 (1980), a district court has the discretion to make this finding later in the trial.
 
 
 25
 The judge may ... admit the hearsay statements subject to later demonstration of their admissibility by a preponderance of the evidence. If this practice is followed, the court should stress to counsel that the statements are admitted subject to defendant's continuing objection and that the prosecution will be required to show by a preponderance of the evidence that a conspiracy existed, that the defendant against whom the statements are hearsay was a participant and that the statement [sic] was made in the course and in furtherance thereof. At the conclusion of the government's case-in-chief, the court should rule on the defendant's objection. If the court finds that the government has met the burden of proof ... it should overrule the objection and let all the evidence, hearsay included, go to the jury, subject of course, to instructions regarding the government's ultimate burden of proof beyond a reasonable doubt and the weight and credibility to be given to co-conspirators' statements.
 
 
 26
 Because the district court adhered to the procedure set forth above, we find no error.
 
 
 27
 Finally, Redmond argues that the district court erred by allowing the jury to review the tape recordings during deliberation. It is well established that "[a] district court has broad discretion to permit a jury to take to the jury room any tape recordings that have been admitted as exhibits during trial." United States v. Scaife, 749 F.2d 338, 347 (6th Cir.1984). We hold that the district court did not abuse that broad discretion in this case.
 
 IV
 
 28
 For the foregoing reasons, we AFFIRM the convictions and sentences of both Fisher and Redmond.
 
 
 
 *
 The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation