7 F.3d 236
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth T. WEBSTER, Roderick Mohammed Ali, Defendants-Appellants.
 Nos. 92-5971, 92-6002.
 United States Court of Appeals, Sixth Circuit.
 Sept. 22, 1993.
 
 Before: GUY and NELSON, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Having been convicted on drug and firearm charges, and having been sentenced to lengthy terms of imprisonment under the Sentencing Guidelines, the defendants in these consolidated cases appeal both the convictions and the sentences. One of the defendants contends, among other things, that he ought to have been acquitted of the charge that he aided and abetted his co-defendant in the use or carrying of a firearm during and in relation to a drug-trafficking crime, see 18 U.S.C. § 924(c), the evidence not having shown that he knew the co-defendant was carrying a weapon. We believe that this contention has merit, and we shall reverse the conviction on this particular charge. We do not find the defendants' remaining contentions persuasive.
 
 
 2
 * On November 20, 1990, an employee of the Wilson World Hotel in Memphis, Tennessee, called the Shelby County Sheriff's Department to report suspicious activity in room 251 of the hotel. The employee reported heavy traffic in and out of the room, with the visitors remaining only a brief time before leaving. The room's registered occupant, Kenneth Webster (one of the defendants herein), had refused to allow maids into the room for normal daily cleaning, and he had made numerous phone calls to California.
 
 
 3
 The sheriff's office promptly dispatched officers to the hotel to conduct surveillance of Mr. Webster's room. Two of the officers took up positions in room 250, directly across the hall from room 251, and another was stationed in the parking lot of the hotel.
 
 
 4
 Through a peephole in the door of room 250, one of the officers observed two men (later identified as Mr. Webster and his co-defendant, Roderick Mohammed Ali) leave room 251. Mr. Webster was holding a clear plastic bag containing a white substance.
 
 
 5
 The officer stationed in the parking lot followed Messrs. Webster and Ali to a house in south Memphis. Cars began arriving at the house shortly after the defendants entered it. People would leave the cars, go into the house, stay a few minutes, and then depart, often holding something in their hands. After approximately twenty-five minutes, the defendants themselves left the house and returned to the hotel.
 
 
 6
 Sheriff's deputies then obtained a warrant to search room 251. The warrant was executed at mid-day on November 21, 1990. The defendants happened to open the door of the room just as the officers were preparing to demand entrance. Mr. Ali, who had a garment bag slung over his shoulder, was leading the way, with Mr. Webster just behind him.
 
 
 7
 Mr. Ali proved to be carrying $7000 in cash. Mr. Webster had a loaded semiautomatic pistol in a pocket of his pants. The room contained a two-burner stove, stainless steel pots, baggies, scales, wire transfer receipts identifying Mr. Webster as the sender, and a postal service money order purchased by Mr. Ali. Inside Ali's garment bag were nine packages of cocaine base.
 
 
 8
 A federal grand jury indicted Webster and Ali for possession of 222.7 grams of cocaine base with intent to distribute it, a violation of 21 U.S.C. § 841(a)(1), and knowingly carrying and using a firearm during and in relation to a drug crime, a violation of 18 U.S.C. § 924(c). Both counts of the indictment also accused the defendants of aiding and abetting each other in the commission of the specified crimes. See 18 U.S.C. § 2.
 
 
 9
 The case went to trial in December of 1991. A jury found both defendants guilty on both counts. Mr. Webster was sentenced to imprisonment for 360 months on the drug charge and 60 months on the firearm charge, the sentences to run concurrently. A five-year period of supervised release was also imposed. The court sentenced Mr. Ali to 151 months on the drug charge and 60 months on the firearm charge. His sentences too were to run concurrently, and they were likewise to be followed by five years of supervised release.
 
 II
 
 10
 * Mr. Ali asserts that the search warrant was issued without probable cause and that the drugs seized in the hotel room should therefore have been suppressed. The assertion is not well taken.
 
 
 11
 A magistrate may properly grant an application for a search warrant when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). The affidavit submitted in support of the application for a warrant in the case at bar demonstrated just such a "fair probability." It set forth the hotel employees' observations of suspicious activities in room 251; described the trip to south Memphis in which Mr. Webster carried a plastic bag containing a white substance; stated that the south Memphis house to which the suspects travelled had been the site of several drug arrests in the recent past; and stated also that Mr. Webster was on parole from a California prison where he had served time on drug charges. The affidavit clearly satisfied the Gates test for probable cause, and the district court acted correctly in denying Mr. Ali's motion to suppress.
 
 B
 
 12
 Both defendants challenge the district court's refusal to grant motions for acquittal under Rule 29(c), Fed.R.Crim.P. Mr. Ali contends that he was entitled to acquittal on both counts; Mr. Webster complains only of the drug conviction. We must conduct a de novo review to determine "whether, after reviewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." United States v. Busacca, 936 F.2d 232, 239 (6th Cir.) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)), cert. denied, 112 S.Ct. 595 (1991).
 
 
 13
 The crime of possession of a controlled substance with intent to distribute it has three elements: "(1) knowing (2) possession of a controlled substance (3) with intent to distribute." United States v. Christian, 786 F.2d 203, 210 (6th Cir.1986). A defendant is guilty of aiding and abetting a criminal act when he "associate[s] himself with the venture in a manner whereby he participates in it as something that he wishes to bring about and seeks by his acts to make succeed." United States v. Knox, 839 F.2d 285, 294 (6th Cir.1988), cert. denied, 490 U.S. 1019 (1989).
 
 
 14
 A rational trier of fact, having heard the evidence elicited at trial in this case, could readily have determined that both defendants were guilty beyond a reasonable doubt either of possessing cocaine with the intent to distribute it or aiding and abetting that crime. The jury heard evidence that the defendants stayed together in a hotel room for one week; that they left their room on the night before they were arrested to engage in what seemed to be a drug transaction; that the hotel room contained pots and pans and a burner stove that could be used to cook cocaine base, scales that could be used to weigh the product, and wire transfer receipts that could indicate the transfer of money acquired through drug trafficking; and that Mr. Ali was carrying over 200 grams of cocaine base and an extraordinary amount of cash at the time of his arrest.
 
 
 15
 Mr. Webster points out that he himself had only $60 on his person at the time of the arrest and was not carrying any drugs. But the jury heard one of the deputies testify that Mr. Webster had left the room the night before carrying a plastic bag containing a white substance like cocaine. The relatively small amount of money that Mr. Webster had with him could easily be explained by the wire transfer receipts. And although the pots, pans, baggies, and scales could conceivably have had some legitimate purpose, the jury was entitled to find that they did not and that their presence in the hotel room lent weight to the conclusion that the two men were engaged in illicit activities.
 
 
 16
 Although the hotel's desk clerk testified that she could not recall seeing Mr. Ali at the hotel during the week Mr. Webster was registered there, one of Ali's own witnesses testified on direct examination that she had spent "a lot of time in the room" with Ali over the course of seven days and seven nights. Several of the articles of clothing in the garment bag carried by Mr. Ali apparently belonged to Mr. Webster, but other articles were of sizes that could reasonably have justified an inference that the bag held clothing of both defendants.
 
 C
 
 17
 Title 18, United States Code, § 924(c) provides:
 
 
 18
 Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....
 
 
 19
 18 U.S.C. § 924(c). To be convicted of this offense, the government must prove beyond a reasonable doubt that (i) the defendant committed a drug trafficking crime; (ii) the defendant used or carried the firearm described in the indictment; (iii) the defendant knowingly used or carried that firearm; and (iv) the defendant used or carried the firearm during and in relation to the drug trafficking crime. See United States v. Brown, 925 F.2d 219, 222 (6th Cir.1990). Mere presence of a firearm during the course of criminal conduct will not support a conviction under the statute. Id. Before a person can be found guilty of an underlying offense as an aider and abettor, the government must prove that the individual associated himself with the criminal venture in a manner whereby he participated in it as something that he wished to bring about and, sought by his actions to make the venture succeed. United States v. Knox, 839 F.2d 285, 294 (6th Cir.1988), cert. denied, 490 U.S. 1019 (1989). In this context, "the government must prove that the defendant both associated and participated in the use of the firearm in connection with the underlying crime." United States v. Morrow, 977 F.2d 222, 231 (6th Cir.1992) (en banc) (citing Nye & Nissen v. United States, 336 U.S. 613, 619 (1949)), cert. denied, 113 C.Ct. 2969 (1993).
 
 
 20
 This court, en banc, recently addressed the sufficiency of the evidence required to convict a codefendant of aiding and abetting a § 924(c) crime in United States v. Morrow, 977 F.2d 222. In that case defendant Morrow argued that he could not be convicted of aiding and abetting his codefendant, Mooneyham, because he did not know that Mooneyham possessed a firearm. A panel of this court reversed his conviction, finding the government's proof's deficient. However, the en banc court concluded that there was sufficient evidence for the jury to conclude Morrow knew Mooneyham was carrying a firearm, not the least of which was the fact that Mooneyham had a holster strapped over his clothing that allowed forest rangers to see the holster from distance of 25 feet. Additionally, the en banc court concluded that there was sufficient evidence that Morrow intended the firearm to be used for protection. Morrow wore a ski mask for his own protection. Therefore, the court concluded there was sufficient evidence to support Morrow's conviction.
 
 
 21
 In Morrow, it took an en banc court to determine that the evidence presented was sufficient to support a conviction. Here, we are faced with far less evidence of Morris' knowledge of Webster's possession of the firearm, let alone any sort of evidence showing he associated and participated in the use of the firearm in connection with the underlying offense. To support its position, the only case the government points to is United States v. Joseph, 892 F.2d 118 (D.C.Cir.1989), where the court found the evidence sufficient to support defendant's conviction for aiding and abetting a violation of § 924(c). Joseph, however has several distinguishing facts. In Joseph, a firearm was found in a bag carried by one of two traveling companions on a train. It turned out the two men were brothers, and while the bag was carried by only one of them, it contained belongings of both men. The court also noted that at all "relevant times the defendant was within a few steps of, and usually no more than an arm's span from, the firearm." Id. at 126.
 
 
 22
 The government argues that, because Morris was in possession of over $7,000 in cash and over 200 grams of cocaine, had an association with Webster for at least several days, and had shared a hotel room with Webster, there was sufficient circumstantial evidence to support the conclusion that Morris not only knew about the firearm, but that he associated and participated in the use of the firearm in connection with the drug trafficking crime. We find the evidence was insufficient to support Morris' conviction on charges of aiding and abetting Webster's § 924(c) offense and therefore vacate his conviction on count II.
 
 D
 
 23
 For sentencing purposes, the district court found that 213 grams of cocaine were involved in the defendants' crimes. The preponderance-of-the-evidence standard governed this finding, see United States v. Gonzales, 929 F.2d 213, 216 (6th Cir.1991), and we must accept the finding as correct unless we conclude that it was clearly erroneous. See United States v. Walton, 908 F.2d 1289, 1300-01 (6th Cir.), cert. denied, 498 U.S. 906, 989, 990 (1990).
 
 
 24
 Mr. Webster maintains that the district court credited him with too much cocaine. (Mr. Ali joins in this argument. While admitting that he did not make a timely objection to the presentence report's quantification of the drug, he relies on the plain error doctrine. See Rule 52(b), Fed.R.Crim.P.) A remand is necessary, Webster maintains, because Deputy Arnold, who collected samples of the materials from inside the garment bag, was a layman ignorant of the proper methodology for collecting representative samples for testing.
 
 
 25
 This argument is not persuasive. Deputy Arnold testified that he took samples from six of the nine bags of drugs found in the garment bag. There is no suggestion in the record that any of the bags differed in any respect from the rest. The district court was certainly entitled to presume that if samples had been taken from the three remaining bags, they too would have tested positive for cocaine. United States v. Powell, 886 F.2d 81, 85 (4th Cir.1989) (approving of process in which 24 of 540 vials were tested for crack), cert. denied, 493 U.S. 1084 (1990); United States v. Brett, 872 F.2d 1365, 1372 (8th Cir.) (affirming sentence based on expert's chemical analysis of six out of 82 similar packets), cert. denied, 493 U.S. 932 (1989). There is absolutely no reason to suppose that the samples Deputy Arnold took were too small, or that only a chemist could have taken proper samples. A research toxicologist who testified at trial did not indicate any problems with the samples that were provided her for testing. She noted that only a few milligrams were needed to test for drug content. The weights recorded here are not challenged, and we cannot say that the district court erred in finding that there were 213 grams of cocaine base.
 
 E
 
 26
 Finally, Mr. Webster argues that the district court abused its discretion by refusing to hold a hearing to inquire into the validity of an earlier conviction relied upon to trigger the career offender provision of the guidelines, U.S.S.G. § 4B1.1. In 1985 Mr. Webster pleaded guilty to a California charge of selling cocaine. He argues that the ensuing conviction was invalid on its face because he pleaded to count II of the information lodged against him, and the information named him only in counts I and III.
 
 
 27
 At the time Mr. Webster was sentenced, Application Note 6 to U.S.S.G. § 4A1.2[1] provided as follows:
 
 
 28
 "Sentences resulting from convictions that have been reversed or vacated because of errors of law, or because of subsequently-discovered evidence exonerating the defendant, are not to be counted. Also, sentences resulting from convictions that a defendant shows to have been previously ruled constitutionally invalid are not to be counted. Nonetheless, the criminal conduct underlying any conviction that is not counted in the criminal history score may be considered pursuant to § 4A1.3."
 
 
 29
 Background commentary on this section noted that "[t]he Commission leaves for court determination the issue of whether a defendant may collaterally attack at sentencing a prior conviction." We have previously suggested that district courts retain some measure of discretion in deciding whether or not to entertain collateral attacks on prior convictions during sentencing under this version of note 6. See United States v. Hoffman, 982 F.2d 187, 190 (6th Cir.1992) (dictum); United States v. French, 974 F.2d 687, 698-701 (6th Cir.1992) (considering above version of note 6 while interpreting earlier version of the same note), cert. denied, 113 S.Ct. 1012, 1431 (1993).
 
 
 30
 The district court's decision not to hold an evidentiary hearing on the 1985 conviction was not an abuse of discretion. The document on which Webster relies to show that he pleaded to an uncharged offense is a "felony complaint for arrest warrant." In accepting the plea, the California court referred repeatedly to count II of the information. Complaints and informations are not the same thing in California. See In re Harris, 775 P.2d 1057 (Cal.1989), dealing with charges initially made in a single felony complaint but prosecuted subsequently under two separate informations. Cf. Serna v. Superior Court of L.A. County, 707 P.2d 793, 804 (Cal.1985) ("Hannon, however, involved a felony complaint, a pleading to be followed upon the arrest of the defendant by a preliminary hearing, and if probable cause was shown, by an order binding the defendant over for trial and the filing of an information"), cert. denied, 475 U.S. 1096 (1986). It is very likely that the problem perceived by the defendant results solely from his mistaking the felony complaint for the information.
 
 
 31
 Even if a plea was accidentally accepted with respect to a count not charged, the mistake did not rise to the level of constitutional error. Mr. Webster admitted at the state sentencing proceeding that he had sold cocaine on February 19, 1985; this was the charge listed as count III in the felony complaint. His attorney agreed that there was a factual basis for the guilty plea. The plea was made after a complete waiver of rights, and the defendant said he was entering the plea voluntarily.
 
 
 32
 Mr. Ali's conviction on count 2 is REVERSED and the sentence imposed with respect to that count is VACATED. In all other respects the judgments of the district court are AFFIRMED.
 
 
 33
 WELLFORD, Senior Circuit Judge, concurring and dissenting in part (as to defendant Ali only).
 
 
 34
 I concur without reservation in all but part C of Judge Nelson's opinion. Part C deals with the gun charge against defendant Ali under 18 U.S.C. § 924(c). I believe the majority errs by reversing Ali's § 924(c) conviction.
 
 
 35
 United States v. Morrow, 977 F.2d 222 (6th Cir.1992) (en banc), cert. denied, 113 S.Ct. 2969 (1993), held that a § 924(c) conviction of this type must be affirmed if "there is ample evidence from which a jury could reasonably conclude that [one defendant] knew his co-conspirator ... carried a firearm and that carrying the firearm facilitated a drug offense." Id. at 231 (emphasis added); See also Judge Martin's decision on this issue in United States v. Christian, 942 F.2d 363 (6th Cir.1991), cert. denied, 112 S.Ct. 905 (1992). Judge Martin refers to the "well-recognized nexus between drugs and firearms" in Christian, 942 F.2d at 368 (citing United States v. Golter, 880 F.2d 91, 94 (8th Cir.1989)).
 
 
 36
 The government's burden was to prove beyond a reasonable doubt that Ali knew Webster was carrying a gun. The government produced evidence from which a jury could conclude that Webster and Ali lived together for six days, that they jointly participated in drug activities, and that they cooperated in dealing with relatively large quantities of drugs and money. The strength of the association between Webster and Ali convinces me that Ali knew Webster was armed, was "covering his back," and was facilitating their drug activities with the weapon. I would therefore affirm Ali's conviction under § 924(c) as an aider and abetter.
 
 
 
 [1]
 The Sentencing Commission has proposed eliminating the second sentence of note 6 and inserting the following paragraph:
 "With respect to the current sentencing proceeding, this guideline or commentary does not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law (e.g. 21 U.S.C. 851 expressly provides that a defendant may collaterally attack certain prior convictions)." 58 F.R. 27148, 27160 (May 6, 1993).