**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William HOFFMAN,**
**Defendant–Appellant.**

**No. 88–6014.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 6, 1990.

Decided and Filed Nov. 1, 1990.

Rehearing and Rehearing En Banc
Denied Jan. 16, 1991.

Louis DeFalaise, U.S. Atty., John M. Compton, Asst. U.S. Atty. (argued), Jane E. Graham, Asst. U.S. Atty., Lexington, Ky., for plaintiff-appellee.

Eugene F. Mooney (argued), Mooney & Mooney, Lexington, Ky., William Hoffman, Montgomery, Pa., for defendant-appellant.

Before JONES and NORRIS, Circuit Judges, and TODD, District Judge.*

---

\* The Honorable James D. Todd, United States District Judge for the Western District of Ten-   nessee, sitting by designation.

PER CURIAM.

William Hoffman appeals his conviction of conspiring to defraud the United States in violation of 18 U.S.C. § 371, aiding and abetting the issuance of unauthorized letters of credit in violation of 18 U.S.C. § 1005, and aiding and abetting the misapplication of a federally insured bank's funds in violation of 18 U.S.C. § 656. He contends that the trial court impermissibly instructed the jury regarding the specific intent required for a conviction and that there was insufficient evidence to support a conviction. For the reasons set forth below, we affirm Hoffman's conviction.

I

The facts in this case involve a complicated series of financial transactions. Thomas J. Rhein, a Kentucky coal operator, borrowed funds from Northern Kentucky Bank to finance a new business venture. Ervin M. Enzweiler, the bank's president, allowed Rhein to overdraft his company checking account by a substantial amount. By the fall of 1981, Rhein's debt to the bank exceeded the state's lending limit for a single customer.

Rhein went to Baltimore to seek another lender. While there, Rhein met with Harvey Kayne, a venture capital lender, and William Hoffman, the office manager for an accounting firm. Kayne engaged Hoffman's firm to analyze a proposed loan from Kayne to Rhein. As part of the investigation, Hoffman was given a list of all the loans Northern Kentucky Bank had made to Rhein. The proposed loan fell through.

After leaving his accounting firm, Hoffman and a group of investors gave money to Kayne to be lent to Rhein. When the funds were repaid, the group decided to lend funds directly to Rhein rather than going through Kayne. Hoffman met with Rhein and Enzweiler and learned that the bank had already exceeded its lending limit to Rhein, that Rhein was substantially overdrawn at the bank, that an immediate loan was needed to reduce Rhein's indebtedness, and that Enzweiler expected the bank examiners to make their annual examination soon. Enzweiler assured Hoffman that the bank would guarantee repayment of loans made to Rhein.

After the meeting, Hoffman met with his partners to discuss the proposed financing arrangement. Although Michael Frelich, the group's attorney, advised against it, the group decided to enter into the arrangement. Two partnerships were formed: Minerals Associates Partnership (MAP) which would make an equipment loan, and Minerals Associates Limited Partnership (MALP) which would make a million dollar line of credit available to Rhein. Hoffman was MALP's managing partner and accountant. He was also the accountant for Rhein's companies.

To draw on the line of credit, Rhein signed thirty day promissory notes at a 10% discount, and Northern Kentucky Bank guaranteed the notes and issued letters of credit as security. MALP made its first loan to Rhein on June 15, 1982. By August 16, 1982, MALP had lent Rhein $750,000. Despite the large sums advanced by MALP, Rhein continued to overdraw his bank account, and Enzweiler honored his checks. As the promissory notes became due, the bank repaid them. Then MALP re-lent the funds to Rhein and transmitted the funds back to the bank to deposit in Rhein's account. Hoffman was in charge of the repayment and re-lending transactions. As part of these transactions, he had Rhein sign new promissory notes and Enzweiler issue credit letters.

In December 1982, Hoffman and the other MALP partners decided to discontinue making loans to Rhein. They demanded that Rhein repay the entire revolving fund. Following the demand, Enzweiler wired Hoffman bank funds totalling over $900,000. Enzweiler concealed evidence of this payment until December 31, 1982. On that date, he made entries in the bank's records which showed that Rhein's overdraft was in excess of three million dollars, an amount that exceeded the bank's statutory lending limits. An investigation followed that resulted in the indictment and conviction of Hoffman, Enzweiler, Rhein, and Nicholas Williams, Rhein's attorney. Hoffman and Williams were tried by a jury.

Hoffman was convicted on all thirty-six counts with which he was charged and was sentenced to ten years imprisonment.

## II

Hoffman claims that the district court violated his due process rights by issuing jury instructions that contained mandatory presumptions. He challenges the instruction that allowed the jury to infer an intent to injure or defraud the bank from Hoffman's reckless disregard of the interests of the bank or if the natural result of his conduct would be to injure and defraud the bank. He also objects to the instruction that allowed the jury to equate "knowledge" with "willful blindness."

Hoffman did not object to these instructions at trial as required by Rule 30 of the Federal Rules of Criminal Procedure. Thus, he has waived his objection unless he can show that the error was so plain that the district judge was remiss in not correcting it. *United States v. Hook,* 781 F.2d 1166, 1172 (6th Cir.1986). An improper jury instruction seldom justifies the reversal of a criminal conviction when no objection was made at trial. *Id.* at 1172–73. As indicated in our discussion below, there is case law which supports the instructions given by the district judge. Therefore, he did not commit plain error in issuing these instructions.

■ The instructions to which Hoffman objects state:

Intent to defraud exists where an employee acts knowingly and if the natural result of this conduct would be to injure and defraud the bank, even though that may not have been his motive.

Likewise, reckless disregard of the interests of the bank is equivalent to intent to injure or defraud.

He argues that these instructions relieve the prosecution of proving the mens rea necessary for a conviction, i.e., that he had the specific intent to defraud or injure the bank or knew of Enzweiler's intent to defraud or injure the bank and acted to further that intent.

This court considered whether reckless disregard was the equivalent of specific intent in bank fraud cases in *United States v. Woods,* 877 F.2d 477 (6th Cir.1989). We determined that "an intent to injure or defraud a bank can be inferred from the facts and circumstances adduced at trial. Such intent exists whenever the officer acts knowingly or with reckless disregard of the bank's interest and the result of his conduct injures or defrauds the bank." *Id.* at 480 (citations omitted). The intent to defraud a bank that is required for a conviction under section 371 is the same as that required for a conviction for willful misapplication of bank funds under section 656. Based on our ruling in *Woods* we find that the district judge did not err in instructing the jury.

■ There was also no error in the instruction that "a defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact." We upheld a similar instruction in *United States v. Gullett,* 713 F.2d 1203 (6th Cir. 1983), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 973, 79 L.Ed.2d 211 (1984). As we stated, "The instruction ... prevents a criminal from escaping conviction merely by deliberately closing his eyes to the obvious risk that he is engaging in unlawful conduct." *Id.* at 1212.

■ Even if the district judge had erred in issuing these instructions, the error would be harmless in that the instructions as a whole were not "so clearly erroneous as to likely produce a grave miscarriage of justice." *United States v. Piccolo,* 723 F.2d 1234, 1241 (6th Cir.1983) (citing *United States v. Thevis,* 665 F.2d 616, 645 (5th Cir.) *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982)). Reviewing the entire set of jury instructions reveals that the judge made it clear that, to convict Hoffman of violating section 371, the jury must find that Hoffman's actions were willful. The judge defined willful as voluntarily and purposefully committing an act with the specific intent to disobey or disregard the law. Immediately after the instruction on willful blindness, the judge stated, "A showing of negligence or mistake is not

sufficient to support a finding of willfulness or knowledge." Because the instructions as a whole required the jury to find that Hoffman had committed all the elements of the crime beyond a reasonable doubt, we find that any error in an individual instruction was harmless.

## III

 Next, Hoffman argues that there was insufficient evidence to support his conviction. Specifically, he states that the government did not prove that he had knowledge of the limits on Enzweiler's authority to issue letters of credit, that he intended to defraud or injure the bank through Enzweiler's misapplication of funds, and that he agreed with the other defendants to mislead, defraud, and deceive the bank's board of directors and the FDIC. In reviewing a sufficiency of the evidence argument, this court must determine "whether after viewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Every reasonable inference from the evidence must be drawn in the prosecution's favor. *United States v. Tilton*, 714 F.2d 642, 645 (6th Cir.1983).

The evidence showed that Hoffman was the accountant for both MALP and Rhein's company, and knew the details of the financial transactions between MALP and Rhein and the bank's role in the transactions. He knew that Rhein was overdrawn at the bank and yet he continued to present promissory notes for Rhein to sign and Enzweiler to pay from bank funds. There was testimony that he even directed the secretaries of Enzweiler and Williams to prepare letters of credit. It was the jury's province to determine the credibility of the witnesses. The jury obviously believed the government's witnesses rather than Hoffman and his witnesses. We are satisfied that the government presented sufficient direct and circumstantial evidence from which the jury could find Hoffman guilty.

Hoffman also contends that conspiring to exceed a state's lending limits is not a federal crime. Hoffman was charged with conspiring to defraud the United States in violation of 18 U.S.C. § 371. The government's theory, which the jury accepted, was that Hoffman conspired with Enzweiler, Rhein, and Williams to defraud the United States by conspiring to exceed Kentucky's lending limits. Conspiring to defraud the United States is a federal crime. Thus, this argument fails.

## IV

Because we find no merit in Hoffman's allegations of error, we AFFIRM the judgment of the district court.