RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0375P (6th Cir.)
File Name: 00a0375p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

　　*v.*

　　　　　　　　　　　　　　　　No. 99-3742

LEONARD C. KRIMSKY,
　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 98-00259—Ann Aldrich, District Judge.

Argued: June 16, 2000

Decided and Filed: October 24, 2000

Before: MARTIN, Chief Judge; BATCHELDER and
MOORE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Nathan Lewin, MILLER, CASSIDY, LARROCA & LEWIN, Washington, D.C., for Appellant. Paul B. Ockene, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Nathan Lewin, Jody Manier Kris, MILLER, CASSIDY, LARROCA & LEWIN, Washington, D.C., for Appellant.

1

Linda M. Betzer, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

BOYCE F. MARTIN, JR., Chief Judge. Leonard Krimsky appeals his conviction and sentence for twelve counts of embezzlement from an employee benefit plan in violation of 18 U.S.C. § 664 and three counts of making false statements and concealing facts in documents required by the Employee Retirement Income Security Act (ERISA) in violation of 18 U.S.C. § 1027. For the following reasons we affirm the decision of the district court.

I.

During the 1980s, Leonard Krimsky owned and operated Worldwide Process Technologies in New Jersey, which manufactured specialized machinery for processing paper and plastics for industrial customers. In 1990, Worldwide Process Technologies purchased Kent Machine Company, a machine shop in Ohio that was experiencing financial difficulties. After the purchase, Kent Machine Company was renamed Kent Worldwide Machine Works (Kent).

Included in the purchase was Kent's employee pension benefit plan administered by the trust department of National City Bank. By 1992, the plan's assets exceeded $3,500,000.00. In 1993, after Kent began to experience financial difficulties, Krimsky approached National City Bank for financing. He requested that National City approve his request for a loan of twenty-five percent of the plan's assets to Kent. The Bank rejected Krimsky's request as a prohibited transaction under ERISA. National City specifically told Krimsky that he needed an exemption from the Department of Labor before the bank could comply with his request for the loan.

exclusion of section 2B1.1, but rather as a supplement to loss calculation as directed by Note 2. *See id.*

To support this holding, *Lucas* pointed to the Sentencing Guidelines' list in Appendix A which determines which guidelines are applied to which statutes. The Sentencing Commission referred to Appendix A as "specifying the guideline section or sections ordinarily applicable to a statute of conviction." Appendix A includes section 2F1.1, in addition to section 2B1.1, as a guideline applicable to § 656. It does not, however, list section 2F1.1 as an applicable guideline to § 664. By listing section 2F1.1 as applicable to § 656 and not § 664, we can only conclude that the Sentencing Commission did not intend Note 2 to apply to § 664. Accordingly, Note 2 directs a court to supplement section 2B1.1 with section 2F1.1 only to those statutes in Appendix A which list both sections. Appendix A lists only section 2B1.1 as a sentencing guideline for courts to follow for a § 664 conviction. Therefore, Krimsky's sentence was proper.

IV.

Krimsky's challenges to the jury instructions and his sentence all fail. We therefore AFFIRM the district court's decision.

court." *United States v. Comer*, 93 F.3d 1271, 1278 (6th Cir. 1996) (quoting *United States v. Partington*, 21 F.3d 714, 717 (6th Cir. 1994)).

Offenses such as larceny, embezzlement, and other forms of theft are usually subject to sentencing pursuant to section 2B1.1. Section 2B1.1's Commentary lists § 664 as one of the covered statutory provisions. An exception exists, however, in Application Note 2 of the Commentary which states that "[w]here the offense involved making a fraudulent loan or credit card application, or other unlawful conduct involving a loan or credit card, the loss is to be determined under the principles set forth in the Commentary to Section 2F1.1 (Fraud and Deceit).**"** Krimsky claims that his embezzlements were actually loans and that, in accordance with Note 2 of section 2B1.1's Commentary, he should have been sentenced under section 2F1.1 rather than section 2B1.1.

Krimsky relies on *United States v. Lucas*, 99 F.3d 1290, 1294 (6th Cir. 1996), which, as directed by Note 2, used section 2F1.1's loss matrix to calculate section 2B1.1's sentencing provisions in connection with an 18 U.S.C. § 656 offense. As we pointed out in *Lucas*, section 2F1.1 applies to a broader spectrum of offenses, while 2B1.1 is limited to certain types of fraud. *See id.* at 1295. "The Commission has determined that the 'amount of loss' inflicted by all categories of frauds should be determined in an identical fashion, but that the particular kinds of fraud covered by section 2B1.1 should be dealt with more harshly." *Id.*

The Commentary to section 2F1.1 does not include § 664 or § 656 in the list of statutory provisions to which it applies. We determined in *Lucas*, however, that even though section 2F1.1 does not include a statute in its Commentary, it would be an error to ignore the fact that the Commentary to section 2B1.1 specifically directs courts to apply the principles of section 2F1.1 in fraudulent loan cases. *See id.* We held that § 656 was absent from section 2F1.1's listed statutory provisions because section 2F1.1 was not to be applied to the

In response to this rejection, Krimsky appointed himself as trustee of the plan and transferred the plan's assets to Huntington Trust Company with the understanding that after Kent applied for an administrative exemption from the Department of Labor, Huntington would grant the loan that National City had refused. The first loan was made in July 1993 for $850,000.00. Krimsky signed a promissory note for the loan that provided for periodic interest payments and a due date in 1995. Krimsky did not make the loan payments and extended the due date to 1998.

In June 1994, a Kent representative sought another loan from the plan. Huntington Trust Company requested additional documentation, which it never received. When Huntington refused the loan request, Krimsky, as trustee, transferred the plan's assets to a new custodian, Fifth Third Bank. In August 1995, Krimsky directed Fifth Third Bank to liquidate thirty percent of the plan's assets and transfer the cash to an account at Marine Midland Bank. Fifth Third resigned as custodian, citing concern that the account was not a conventional trust account, but did transfer $64,008.00 to the Marine Midland account. Later Fifth Third sent a $651,506.32 check to Marine Midland with a cover letter indicating that the money was in regard to the Kent pension plan. Krimsky's account with Marine Midland was not a defined benefit pension plan account and therefore was not qualified to receive the plan funds. Once it became aware of this, Marine Midland honored Fifth Third's request to stop payment on the check. Marine Midland had, however, already sent $60,000.00 of the $64,008.00 deposit to United Jersey Bank at Krimsky's request.

On August 22, Krimsky opened a new account with Dean Witter to which Fifth Third transferred the plan's remaining assets. It was from this account that Krimsky took the second loan of $2,195,000.00 of the plan's assets. This loan consisted of twelve installments between August 1995 and January 1996. Krimsky admitted that he knew that such a transaction was prohibited under ERISA but was told that it was permissible if approval was obtained and that approval

could be obtained in some circumstances after the transaction had occurred.

In November 1995, a plan participant complained to the Department of Labor and produced a Form 5500 that showed the 1993 loan for $850,000.00. In April 1996, a Department of Labor investigator initiated an on-site investigation. The inspection resulted in a voluntary compliance letter dated May 8, 1996, stating that the Regional Director would not bring a lawsuit against Krimsky if he repaid the 1993 loan and had the plan independently audited. Krimsky responded by offering to repay the $850,000.00 loan in installments of $50,000.00 per month. During a subsequent meeting between Krimsky and the investigator, Krimsky disclosed the existence of the second loan and proposed a schedule for repayment for that loan as well.

The business subsequently failed. A forced foreclosure sale of the collateral securing the loans was held and resulted in a purchase price of $2.6 million. After various other obligations were satisfied, the sale produced $1,490,000.00 for the fund.

Krimsky was indicted in July 1998. He was charged with thirteen counts of theft from a pension fund in violation of 18 U.S.C. § 664, one for the 1993 loan and one count for each of the twelve installments of the 1995 loan. He was also charged with three counts of submitting false ERISA reporting forms to the IRS in violation of 18 U.S.C. § 1027. A jury convicted Krimsky on all but one of the counts. The district court determined Krimsky's offense level under the United States Sentencing Guidelines to be twenty-six and sentenced him to five years imprisonment, followed by a two-year period of supervised release. Krimsky began serving his sentence on July 15, 1999.

## II.

Krimsky makes multiple challenges to the jury instructions. He alleges that the district court erred by: (1) inadequately defining intent in the 18 U.S.C. § 1027 jury instruction;

establish that reckless disregard satisfies the intent requirement of similar statutes. For example, in *United States v. Woods*, 877 F.2d 477 (6th Cir. 1989), we considered whether reckless disregard was the equivalent of specific intent in cases involving willful misapplication of bank funds in violation of 18 U.S.C. § 656. We concluded that "[s]uch intent exists whenever the officer acts knowingly or with reckless disregard of the bank's interests and the result of his conduct injures or defrauds the bank." *Id.* at 480. Similarly, we have held that the intent required for a conviction of conspiracy to commit fraud against the United States under 18 U.S.C. § 371 is the same as that required for a conviction under § 656. *See United States v. Hoffman*, 918 F.2d 44, 46 (6th Cir. 1991). In *Hoffman*, we held that a district court correctly instructed the jury that reckless disregard is equivalent to intent to injure or defraud. *See id.* Furthermore, in *United States v. Luxenberg*, 374 F.2d 241 (6th Cir. 1967), a case involving a violation of 18 U.S.C. § 657, we held that willful intent was the equivalent of reckless disregard for the interests of a licensee of the Small Business Administration.

After reviewing the law of this Circuit, we find that specific intent for the theft or embezzlement of funds in violation of § 664 is the same as that of §§ 371, 656, and 657. The specific intent required for finding a violation of § 664 includes reckless disregard for the interests of the plan. Accordingly, the district court's jury instructions with regard to § 664 were correct.

## III.

Finally, Krimsky claims that the district court erred by using section 2B1.1 of the Sentencing Guidelines to compute his sentence rather than section 2F1.1. We review a district court's factual findings in relation to the application of the sentencing guidelines under the clearly erroneous standard. *See United States v. Powers*, 194 F.3d 700, 702 (6th Cir. 1999). "Whether the facts found by the district court warrant the application of a particular guideline provision is a legal question and is to be reviewed *de novo* by the appellate

Here, Krimsky failed to demonstrate that there was any tangible risk of jury confusion. The counts before the jury did not contain the same complexities found in *Duncan*, and Krimsky identified no variance between the indictment and the proof at trial. The court therefore did not err in failing to give a more specific unanimity instruction.

### C.

Krimsky asserts that the district court's instruction to the jury with regard to the specific intent requirement of 18 U.S.C. § 664 was also erroneous. According to Krimsky, the instructions equated specific intent with "reckless disregard" and thereby permitted the jury to convict him of embezzlement if it found only that he was reckless in protecting the plan's interests. Krimsky claims that the district court should have instructed the jury that it must find that Krimsky's conduct was "purposely unlawful" in order to find a violation of § 664.

Section 664 makes it unlawful to embezzle, steal, or unlawfully and willfully abstract or convert to one's own use or to the use of another, any of the monies, funds, securities, premiums, credits, property, or other assets of any employee benefit plan subject to Title I of ERISA, or of any connected fund. To prove a violation of § 664, the United States must show that the defendant "(1) embezzled (2) funds (3) from an employee benefit plan, and (4) with the specific intent to deprive the plan of its funds." *United States v. Busacca*, 936 F.2d 232, 239-40 (6th Cir. 1991). Whether a defendant has the requisite intent under § 664 is a question of fact for the jury. *See id.* The portion of the jury instructions to which Krimsky now objects states that "[a]cting with 'specific intent' means acting with intent to deprive the retirement plan of its funds or with reckless disregard for the interests of the retirement plan."

Krimsky asserts that the government must prove that a defendant acted with the purpose of violating § 664 and that reckless disregard for the plan's interests is insufficient to establish culpability. Decisions in prior cases, however,

(2) failing to provide a specific unanimity instruction; and (3) failing to properly instruct the jury on 18 U.S.C. § 664's specific intent requirement. Normally, we review the district court's jury instructions "to determine whether they fairly and adequately submitted the issues and applicable law to the jury." *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991). In this case, however, Krimsky did not object to the instructions at trial. We therefore review the jury instructions for plain error. *See United States v. Hoglund*, 178 F.3d 410, 412 (6th Cir. 1999). "Plain error is defined as an egregious error, one that directly leads to a miscarriage of justice." *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir. 1988).

### A.

Krimsky claims that the district court erred when giving the jury instruction for the alleged violation of 18 U.S.C. § 1027. The district court, in the jury instruction entitled "Elements of the Offenses," explained that the knowledge element of § 1027 would be satisfied if:

> Mr. Krimsky did so knowingly and wilfully [sic] and: (i) in the case of a false statement, with knowledge that the statement was false or with reckless disregard for its truth or falsity; or (ii) in the case of a concealment, cover up or failure to disclose, without a ground for believing that his action was lawful or with reckless disregard for its lawfulness.

In *U.S. v. S & Vee Cartage Co.*, 704 F.2d 914 (6th Cir. 1983), we followed the Second Circuit in holding that "the term 'knowingly' in § 1027 requires only 'proof of a voluntary conscious failure to disclose without ground for believing that such non-disclosure is lawful, or with reckless disregard for whether or not it is lawful.'" *Id.* at 919 (quoting *U.S. v. Tolkow*, 532 F.2d 853, 858 (2d Cir. 1976)). Krimsky recognizes that, in the above-quoted jury instruction, the district court accurately stated the law in this circuit. Krimsky argues, however, that other jury instructions gave a different definition of the intent element, thereby creating a "real

possibility" that the jury convicted Krimsky without finding that he possessed the criminal intent actually required.

In the instruction entitled "Knowing Action," the district court wrote that "[t]he third element refers to Mr. Krimsky acting 'knowingly and wilfully [sic].' With respect to this phrase, please refer to page 24 - 'Inferring Mental State.'" The "Inferring Mental State" instruction said, in part, "You may also consider the natural and probable results of any acts that the defendant knowingly did, and whether it is reasonable to conclude that the defendant intended those results." Krimsky claims that section lowered § 1027's required criminal intent element by equating "knowingly and willfully" with the standard of "knowledge" in civil litigation - that is, the natural and probable results of any acts. This, Krimsky argues, creates a possibility that he was convicted not because he knowingly and willfully filed false forms, as § 1027 requires, but rather because he failed to scrutinize them adequately, which would "naturally and probably" result in the filing of false forms. We disagree.

In the jury instruction defining the elements of the § 1027 offense, the district court articulated the correct intent standard for a finding that Krimsky acted "knowingly and willfully." Additionally, the district court correctly defined "knowingly and willfully" at page 23 of the instructions. If Krimsky had wished, he could have sought to have that definition incorporated by reference into the § 1027 offense instruction, but he failed to raise this at the trial level. Finally, the portion of the jury instructions that Krimsky complains of addressed not the level of Krimsky's subjective intent, but rather the tools available to the jury when inferring subjective intent from objective actions. Although an instruction more clearly explaining the difference between the two tasks may have been desirable and proper, the absence of it does not create the plain error that Krimsky must show in order to overturn his conviction.

## B.

Krimsky next alleges that the district court erroneously failed to give a more specific jury instruction on unanimity. Krimsky claims that the district court should have provided the jury with a unanimity instruction that specifically required all members of the jury to agree as to the falsity of any particular statement or representation. Krimsky relies on *United States v. Duncan*, 850 F.2d 1104, 1110 (6th Cir. 1988), which held that a court should give the jury an augmented unanimity instruction when an indictment charges that a defendant committed an offense by "multiple alternative conceptually distinct acts." This case, however, does not exhibit the same factors that the *Duncan* court found necessitated an augmented instruction. In *Duncan*, the jury requested clarification on charges in the indictment that contained multiple material facts. *See id.* at 1114. The *Duncan* court found that the obvious confusion of the jury as to their unanimity on the counts containing the multiple facts called for a more specific instruction. *See id.* The *Duncan* court thus held that a jury instruction addressing specific or augmented unanimity is necessary if "1) a count is extremely complex, 2) there is a variance between the indictment and the proof at trial, or 3) there is a tangible risk of jury confusion." *United States v. Thomas*, 74 F.3d 701, 712 (6th Cir. 1996).

In *Thomas*, this Court clarified *Duncan* by stating that a single count that presents more than one potential basis for conviction does not automatically require a unanimity instruction. *See id.* "Rather, we have consistently recognized that the need arises when it is shown that there is a 'genuine risk that the jury is confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts.'" *Id.* (quoting *United States v. Sims*, 975 F.2d 1225, 1241 (6th Cir. 1992)). Therefore, there must be specific evidence to demonstrate the need for a specific unanimity instruction before a trial judge will be required to provide such an instruction.