NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0082n.06
Filed: November 12, 2004

No. 02-5653

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATE DISTRICT |
| DANIEL P. LUBOWA, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

**Before: KRUPANSKY\* and COLE, Circuit Judges, and COOK, District Judge.\*\***

**KRUPANSKY, Circuit Judge:** Plaintiff-appellant, Daniel Lubowa ("Lubowa") has forwarded several claims in challenging his jury conviction and sentencing on five counts of mail fraud, in violation of 18 U.S.C. § 1341. For the reasons discussed below, this court AFFIRMS the district court's determination on each issue.

Lubowa, a modern-day Elmer Gantry, was named in a one count indictment charging him with five counts of mail fraud in his efforts to solicit donations from church congregants for his "missionary" work in Uganda and Sudan. The appellant pleaded not guilty and proceeded to trial

---

\*This decision was concurred in by The Honorable Robert B. Krupansky before his untimely death on November 8, 2004.

\*\*The Honorable Julian A. Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation.

in February 2002. After a five-day trial, the jury returned a verdict of guilty against Lubowa as to all counts. On May 7, 2002, the appellant received a concurrent sentence of 40 months, and a fine of $75,000. Lubowa filed this timely appeal on May 9, 2002.

In 1992, Lubowa formed Grace Ministries International ("GMI"), with a volunteer board of directors in Rochester, Minnesota for the stated purpose of raising money to fund Christian pastors in his native Uganda, Africa. The board members resigned, however, soon after Lubowa requested that GMI pay for his recently purchased sports car and after he refused to account for monies given to the association. Lubowa, nevertheless, continued with his collection efforts: renting a small office for GMI in a hotel basement in Rochester which he staffed with a volunteer, and maintaining a post office box to receive mailed donations.[1]

Lubowa solicited funds and goods from church congregants in a number of states including Minnesota, Kentucky, Tennessee, Georgia, Texas and Oklahoma. Lubowa told church congregations that he was involved in missionary work in Sudan and Uganda, and requested donations in the name of GMI, the East African Bible Belt Council (of which he was President), and the African Baptist Convention (of which he was the sole known member).

From 1997 through 2001, Lubowa traveled throughout the southeast United States to raise funds for GMI. Several churches donated money after Lubowa spoke passionately to their congregations about missionary needs in Africa, earmarking contributions intended for church

---

[1] GMI became a delinquent corporation in Minnesota in 1998.

construction and pastor expenses in Uganda,[2] purchasing bibles and bicycles. Congregants also made in-kind donations of clothing to be shipped to the African nation for distribution. Evidence indicated that between June 26, 1997, and June 22, 2001, there were approximately 226 individual deposits, totaling $386,175.00, into three separate bank accounts controlled by Daniel Lubowa, his *nom de guerre* Mark Phelps, or GMI. Lubowa provided no evidence of income aside from those donations.

To further his scheme, Lubowa adopted several aliases. Some church congregations knew him as Mark Phelps, while others received e-mails purportedly from a Dr. Mark Isaacs, who appeared to be affiliated with GMI. Lubowa represented that Dr. Mark Isaacs was head of GMI. Meanwhile, Lubowa created the semblance of an organized, charitable and religious foundation by hiring temporary employees to work in a rented apartment in Lexington, Kentucky. The record indicated that Lubowa directed employees and volunteers to misrepresent themselves as officers of GMI in correspondence to donors.

Testimony further revealed that Lubowa did not maintain itemized accounts even though he solicited donations from congregants and churches to GMI for specific purposes. Instead, checks mailed to the post-office box in Minnesota were deposited into one of several bank accounts controlled by Lubowa. Government investigators sampled five of those mailings to form the basis of the instant mail fraud matter.

---

[2]Additional testimony indicated that several church members sent monthly payments to GMI to sponsor specific pastors in Uganda. None of the pastors actually existed, but for one, who turned out to be Lubowa's brother.

Lubowa used the monies in the GMI account to purchase automobiles, to finance a hotel he owned in Uganda, and to support his girlfriend in Uganda. Additionally, he received thousands of dollars through wire transfer. In his regular visits to Uganda, Lubowa purchased land and sold church donated clothing. Testimony further revealed that in 1999, Lubowa shipped a limousine, several large kitchen appliances and televisions from the United States to Uganda. At the time of his arrest, Lubowa was preparing to ship two more automobiles to Uganda.

Several congregants testified that in their visits to Uganda they could find no evidence of Lubowa's missionary work, or any indication that he had spent donated money as he had represented to church members. During those visits, Lubowa assured the questioning congregants that he could account for the donations through his computer records, yet he never provided those records. Witnesses further recounted that Lubowa recruited church members to accompany him on missionary trips to Uganda, during which Lubowa billed the groups at inflated rates for hotel accommodations, food, ground transportation and airline tickets.

Lubowa testified that he used GMI funds for missionary purposes in Africa and that he never intended to deceive anyone in personally using GMI funds. Lubowa admitted only to spending money on his personal travel expenses. He stated that he performed "underground" missionary work in Sudan and that he used the Mark Phelps alias in order to minimize his exposure to Muslims opposed to his activities. He further testified that he freely distributed the donated clothes in Uganda, that he used the automobiles in his ministry work, and that he purchased land in Uganda for a medical clinic site, a guest house for missionaries, and a school. Finally, Lubowa testified that Dr. Mark Isaacs was a real person with whom he had worked in Sudan.

At the conclusion of the trial, the jury found Lubowa's testimony less than credible. Additionally, Judge Hood determined that Lubowa obstructed justice when he testified that he had worked in Sudan and that Dr. Mark Isaacs was an actual person.

Lubowa has, first, claimed that in prosecuting the case *sub judice*, the government effectively altered the terms of the indictment through its presentation of evidence, thereby modifying the essential elements of the mail fraud offense to such a degree that the defendant was convicted of an offense other than that charged in the indictment. This Circuit has directed that a constructive amendment occurs when the evidence and the jury instructions alter the offense charged in the indictment resulting in the substantial likelihood that the defendant was convicted of a different offense. *See United States v. Solorio*, 337 F.3d 580, 590 (6th Cir. 2003).

Because Lubowa did not raise his constructive amendment claim before the district court, this court will review only for plain error. *United States v. Wilson*, 168 F.3d 916, 923 (6th Cir. 1999). Accordingly, the error must be "plain," and it must "affect substantial rights," which "usually means that the error must have affected the outcome of the district court proceedings." *United States v. Cotton*, 535 U.S. 625, 631 (2002). Even so, the court has discretion to notice the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 631. "Plain error is defined as an egregious error, one that directly leads to a miscarriage of justice." *United States v. Krimsky*, 230 F.3d 855, 858 (6th Cir. 2000).

In the instant case, the evidence reveals that the indictment, the proof, and the instructions were consistent with each other. The indictment contained five counts of mail fraud based upon five different mailings. To prove mail fraud, however, the United States needed show not only the use

of the mails, but also a scheme to defraud.  *See, e.g., United States v. Crossley,* 224 F.3d 847, 857 (6th Cir. 2000).  The background section of the indictment provided that from 1993 through 2001, Lubowa devised a scheme to defraud by soliciting contributions for GMI, by making material misrepresentations to induce contributions, and by appropriating the contributions for his personal use.  Most of the government's proof naturally concerned Lubowa's scheme.  The district court properly instructed the jury on the scheme and mailing elements of mail fraud.  Accordingly, the evidence and jury instructions did not constructively amend the mail fraud charges upon which Lubowa was indicted and ultimately convicted.

Lubowa has further contended that the government presented insufficient evidence to support the counts named in the indictment.  Specifically, appellant has charged that the victims named in the indictment did not testify and that it was, therefore, "impossible for a jury to determine that these alleged victims were defrauded."

A claim of sufficiency of the evidence is reviewed in the light most favorable to the government, drawing all inferences in the government's favor, determining only whether any "reasonable jury could find guilt beyond a reasonable doubt." *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999).

A conviction for mail fraud requires proof both of a scheme to defraud, and use of the mails in furtherance of the scheme. *United States v. Brown*, 147 F.3d 477, 483 (6th Cir. 1998).  "The prosecution must prove that the defendant possessed the specific intent to deceive or defraud in order to convict him; the issue of fraudulent intent is an issue reserved for the trier of fact." *Id.* A defendant possesses specific intent to deceive or to defraud when he knowingly makes a material

misrepresentation for the purpose of inducing the fraud victim to part with money or property. *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998).

Mail fraud does not require proof that a defendant actually used the mails. Rather, a reasonable person must have foreseen such use. *See, e.g., Crossley*, 224 F.3d at 857. When Lubowa directed donors to mail their checks to his post office box in Minnesota, use of the mail was reasonably foreseeable.

In the instant matter, viewed in the light most favorable to the prosecution, a rational jury could have found beyond a reasonable doubt that Lubowa possessed specific intent to deceive or to defraud. As the evidence indicated, Lubowa deceived church members by stating that he performed missionary work in Sudan, by using aliases, and by holding out GMI as a legitimate and organized foundation. Lubowa addressed congregations in several states on his "mission" to Africa, he accepted clothing donations and money for missionary purposes in Uganda. Rather than spend the money as represented, on church construction, pastor sponsorships, and other missionary expenses, Lubowa instead sent money to his girlfriend, purchased automobiles, land, and a hotel. The jury properly found the evidence sufficient to support Lubowa's indictment.

The appellant has, next, maintained that the district court allowed the government to introduce evidence of uncharged acts, for which there were no Rule 404(b) findings, and without limiting instructions, which were prejudicial and irrelevant to the offenses of conviction. Lubowa's contention is unsupportable.

The charge of "other acts" evidence stems from Fed. R. Evid. 404(b), which directs the court to permit the introduction of evidence on issues such as motive, opportunity, intent, preparation,

plan, knowledge, identity or absence of mistake. The district court is also directed to weigh the probative nature of the evidence to determine if the inherent prejudicial nature of such evidence outweighs its value to the jury. *See e.g., United States v. Talley*, 164 F.3d at 999. Pursuant to *United States v. Ward*, 190 F.3d 483 (6th Cir. 1999), where a court admits evidence under Rule 404(b), it should instruct the jury on the basis for its inclusion into the case, rather than merely reciting the litany of reasons available under Rule 404(b).

As an initial matter, the record reveals that Lubowa did not object at trial to any evidence based upon Federal Rule of Evidence 404(b). Accordingly, this court reviews for plain error. *United States v. Murphy*, 241 F.3d 447, 451 (6th Cir. 2001).

Contrary to Lubowa's contention, the record before this court indicated that the government simply did not present any Rule 404(b) evidence during the trial. Accordingly, there were no Rule 404(b) findings or limiting instructions. Rather, each witness testified, to the satisfaction of the jury, that Lubowa executed a scheme to defraud as set forth in the indictment.

The appellant has, further, objected to the amount of loss attributed to him in his fraudulent scheme and submits that re-sentencing is required. Lubowa has specifically maintained that the district court should have off-set the approximately $386,000 in donations he received by subtracting legitimate expenses taken on behalf of the victims, and the legitimate costs of "keeping up the ministry, such as lighting, phone bills, and rent." For instance, Lubowa has contended that "many of the alleged victims received tangible benefits, such as travel to Uganda, lodging, meals."

This court reviews the district court's loss calculation only for clear error. *See United States v. Jackson*, 25 F.3d 327, 330 (6th Cir. 1994) (defendant has a heavy burden to show that the amount

is outside the realm of permissible computations). "Because the precise amount of the loss may be difficult to ascertain, various methods of fixing the total loss may be used. But, no matter what method is used, a court need only make a reasonable estimate of the loss, given the available information." *United States v. Brawner*, 173 F.3d 966, 971 (6th Cir. 1999).

In the instant case, the probation officer calculated the amount of the loss based on the deposits into bank accounts that Lubowa controlled. After careful review, the district court properly held that the calculated amount of loss included the deposits that Lubowa obtained through his fraudulent scheme. Moreover, any alleged off-set to the sentencing loss would be *de minimus*. Lubowa rented a basement room in a hotel in Minneapolis, staffed by a part-time volunteer, who funneled the donations to GMI into bank accounts controlled by the appellant. Additionally, the testimony indicated that Lubowa charged the church groups higher-than-market rates for the lodging, flights and meals involved in their tours of Uganda. Finally, the loss calculation did not include any cash donations Lubowa received in person or the value of meals and accommodations provided him without charge by congregants during his barnstorming.

Lubowa has also challenged the district court's imposition of a sentence enhancement for obstruction of justice. This court reviews for clear error the district court's fact-bound decision to apply the two-level sentencing enhancement for obstruction of justice under U.S.S.G. § 3C1.1. *United States v. Jackson-Randolph*, 282 F.3d 369, 390 (6th Cir. 2002). If a defendant commits perjury when testifying, the enhancement applies. *United States v. Lawrence*, 308 F. 3d 623, 631 (6th Cir. 2002). To apply the two-level increase for obstruction based on perjury, the district court must identify the statements that constitute perjury. *Id.* at 633.

In the instant case, the district court specifically found that Lubowa perjured himself when he testified falsely regarding his work in Sudan, and when he represented Dr. Mark Isaacs as an actual person. The district court noted that appellant's testimony on Dr. Mark Isaacs "was designed to legitimize his scheme and artifice and to sway the jury." Equivalently, the district court stated that appellant's testimony regarding Sudan was in an effort to "legitimize" his use of the alias Mark Phelps.[3] In attempting to legitimize his scheme and to sway the jury, Lubowa willfully gave false testimony about a material matter. The district court's determination properly "encompassed all the factual predicates for a finding of perjury." *Lawrence*, 308 F.3d at 632.

Lubowa's two-level enhancement for obstruction of justice was predicated on a finding by the district court, and not a jury, which, this court notes *sua sponte*, implicates the Supreme Court's recent determination in *Blakely v. Washington*, --- U.S. ----, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), calling into question the constitutionality of sentencing enhancements based on facts not found by a jury. However, this court's recent *en banc* decision in *United States v. Koch*, 383 F.3d 436, 2004 WL 1899930 (6th Cir. Aug. 26, 2004), directs us to conclude that *Blakely* does not affect the validity of a sentence imposed under the federal sentencing guidelines, enabling the application of an obstruction of justice enhancement by the district court in the instant matter. *See also United States v. Hammoud*, 381 F.3d 316, 357 (4th Cir. 2004).

The appellant has additionally contended that the district court erred when it allowed the introduction of evidence before the jury of Lubowa's personal religious beliefs, and permitted an

---

[3]Lubowa justified the Phelps alias on the grounds that he had to assume a different name as his "underground" missionary work in Sudan made him a target for Muslims.

investigating agent to testify about Lubowa's handwriting. Both the evidence and the testimony were proper.

"Decisions regarding the admission and exclusion of evidence are within the peculiar province of the district court and are not to be disturbed on appeal absent an abuse of discretion." *United States v. Middleton*, 246 F.3d 825, 838 (6th Cir. 2001). In evaluating the evidence, this court utilizes the standard of "unfair prejudice," meaning the "undue tendency to suggest a decision based on improper considerations; it does not mean the damage to a defendant's case that results from legitimate probative force of the evidence." *Sutkiewicz v. Monroe County*, 110 F.3d 352, 361 (6th Cir. 1997). In the instant case, the district court did not abuse its discretion in admitting evidence of Lubowa's religious beliefs or the testimony of an investigator regarding Lubowa's handwriting.

The evidence of Lubowa's religious beliefs supported an inference of fraud. Prior to opening statements, Lubowa's counsel objected *in limine* relating to evidence of Lubowa's religious beliefs. The government responded that evidence would show that Lubowa joined a Pentecostal church soon after he wrote that the Pentecostal movement should be stopped in Africa. The government explained that the evidence proved that Lubowa made statements to people to become a part of their religious movement, regardless of his actual beliefs. The district court properly concluded that the evidence of Lubowa's inconsistent religious statements was admissible to prove that Lubowa made the contradictory statements to church members, variously Pentecostal and Baptist congregants, to ingratiate himself and thereby perpetuate his fraudulent scheme. *See, e.g., United States v. Mick*, 263 F.3d 553, 566 (6th Cir. 2001).

With regard to the testimony on Lubowa's handwriting, the appellant did not object to the investigating agent's testimony identifying Lubowa's signature on documents. Accordingly, this court reviews appellant's claim for plain error. *Murphy*, 241 F.3d at 451. Based on his investigation, the agent testified that he recognized Lubowa's handwriting. Such testimony was proper under Fed. R. Evid. 901(b)(2), and would have been proper even if Lubowa had made a timely objection to the admission of the evidence.[4]

Next, appellant claims that the government engaged in prosecutorial misconduct in its opening remarks, by referring to Lubowa as a liar. Lubowa's contention is without foundation. Because Lubowa did not object to the government's opening statement, this court reviews the claim for plain error.

During the opening statement, the prosecutor properly outlined the anticipated evidence. Part of the evidence rested on the misrepresentations Lubowa made to induce church donations. That evidence entailed an explanation that Lubowa's statements about his missionary work in Sudan were untrue, and that the five chosen mailings named in the indictment were merely a sample of thousands of mailings that comprised an integral part of Lubowa's scheme. The proof was consistent with the prosecutor's opening statements. Accordingly, the district court properly instructed the jury that opening statements were an outline of the case, not evidence or argument.

---

[4]The government did not represent the investigating agent as a handwriting expert, and his recognition testimony was within the ambit of Rule 901(b)(2) which provides for the admission of "[n]onexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of litigation."

Finally, the appellant has maintained that the district court committed reversible error when it ordered Lubowa's arraignment based on an indictment that was unsigned by the grand jury foreman, in violation of Fed. R. Crim. Proc. 6(c). Lubowa's claim is patently frivolous.

The record contains only one original indictment, which was signed by the foreman. The evidence indicated that to expedite the grand jury return, indictments in the Eastern District of Kentucky are routinely copied after being signed by the United States Attorney, but prior to the presentations to the grand jury. Consequently, service copies, while stamped as filed by the district court clerk, do not contain the foreperson's signature. Speculatively, Lubowa may have received one of these service copies during his arraignment, however, the only indictment in the record is the original indictment with the foreman's signature.

For the foregoing reasons, this court AFFIRMS Lubowa's conviction and sentence on all issues.