NOT RECOMMENDED FOR PUBLICATION
File Name: 11a0692n.06

No. 11-3462

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Sep 28, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| JAMES SCHMIDLIN, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

Before:   GILMAN and KETHLEDGE, Circuit Judges; and LUDINGTON, District
Judge.[*]

RONALD LEE GILMAN, Circuit Judge.   James Schmidlin was convicted by a jury of making an interstate communication involving a threat of arson, in violation of 18 U.S.C. § 844(e). He argues on appeal that the district court erred by (1) failing to give an augmented unanimity jury instruction regarding the elements of § 844(e), (2) rejecting his proposed jury instruction, and (3) failing to provide the jury with a special-verdict form.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

**A.    Factual background**

---

[*] The Honorable Thomas L. Ludington, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

In the early months of 2010, while Congress was vigorously debating the merits of proposed healthcare-reform legislation, Schmidlin began calling the offices of congressional representatives to voice his objection to the bill. One of his calls was to Congressman John Boccieri's field office in Canton, Ohio. The call was made on March 4, 2010 from a parking lot in Cleveland, Tennessee. Katie Jones, an assistant to the congressman, answered Schmidlin's call. She gave a standard greeting, provided her name, and identified the office as that of Congressman Boccieri.

At trial, Jones and Schmidlin offered different accounts about what happened next. According to Jones's testimony, Schmidlin ignored her greeting and immediately launched into a verbal assault on the congressman, yelling: "John Boccieri doesn't get it. He just doesn't get it. I swear I'm going to burn his fucking house down." Jones said that she replied to Schmidlin by asking for his name and telling him that such threats would not be tolerated. Schmidlin did not respond, but instead repeated his threat to burn down Congressman Boccieri's house and then hung up the phone. The entire call lasted less than one minute.

Schmidlin recalled the conversation quite differently. In his version, he began by pledging to never vote for another Democrat if the House of Representatives passed the healthcare-reform bill. There was then some back-and-forth regarding Congressman Boccieri's intention to vote for the bill, during which time Schmidlin grew progressively angrier. Schmidlin ended the call by repeating his earlier pledge to never again vote for a Democrat if the bill passed in the House.

In his testimony, Schmidlin conceded that he was upset by the end of the conversation. But he maintained that he never threatened to burn down Congressman Boccieri's house; rather, he told

Jones that "if [Congressman Boccieri] votes for this bill and this bill passes the House, we're going to kick every one of them out of office and we are going to fucking burn down this house of cards." Thus, in Schmidlin's account of the conversation, the threat that he made to Congressman Boccieri was purely a political one: he used the phrase "burn down" in conjunction with the word "house" only as a metaphor for the power of the vote.

When the call was over, Jones immediately reported the conversation to Congressman Boccieri's Washington, D.C. office. She also sent an email to the Capitol Police detailing the nature of the call and the relevant facts. Jones did not know that Schmidlin was the one who made the call, however, because he had used his cell phone's "*67" feature, which blocked the display of the incoming number. But the government eventually traced the call to Schmidlin's cell phone by examining the telephone records from Congressman Boccieri's office and focusing on the only call made to the office during the time frame given by Jones that took less than one minute. Three weeks later, an agent from the Federal Bureau of Investigation questioned Schmidlin about the incident. Schmidlin denied recognizing Congressman Boccieri's name and refused to acknowledge whether he knew anything about the call.

**B.    Procedural background**

On September 29, 2010, Schmidlin was indicted on one count of making an interstate communication involving a threat of arson, in violation of 18 U.S.C. § 844(e), and on one count of making a harassing telephone call, in violation of 47 U.S.C. § 223(a)(1)(C). Because Schmidlin was

ultimately convicted on only the first count, the relevant statute for the purposes of this appeal is 18

U.S.C. § 844(e).

> Count one of the indictment against Schmidlin reads as follows:

> On or about March 4, 2010, in the Northern District of Ohio, Eastern Division, the defendant, JAMES L. SCHMIDLIN, did place a telephone call in interstate commerce from the State of Tennessee to the State of Ohio, which telephone call willfully made a threat, **and** maliciously conveyed false information known to JAMES L. SCHMIDLIN to be materially false, concerning an attempt being made and to be made to unlawfully damage and destroy a building by means of fire; to wit, the house of United States Congressman John Boccieri, in violation of Title 18, Section 844(e), United States Code.

(Emphasis added.) Section 844(e), in contrast, provides in relevant part that a person can be

convicted under the statute if he or she uses an instrument of interstate commerce to "willfully make[]

any threat, **or** maliciously convey[] false information knowing the same to be false, concerning an

attempt or alleged attempt being made, or to be made, to . . . damage or destroy any building, vehicle,

or other real or personal property by means of fire." (Emphasis added.) That is, a person can violate

§ 844(e) by either (1) willfully making a threat concerning an attempt to destroy property by fire, or

(2) maliciously and knowingly conveying false information concerning such an attempt. But the

statute does not require the perpetrator to do both, as Schmidlin himself conceded in his brief.

The indictment against Schmidlin charged that he had violated the statute in both ways, thus

creating a divergence between what the government had charged and what it was required to prove.

Although such a divergence is permissible for statutes written in the disjunctive, like § 844(e), *see*

*United States v. Budd*, 496 F.3d 517, 528-29 (6th Cir. 2007), the use of the word "and" in the

indictment where the statute uses "or" nevertheless created confusion when the case went to trial.

During their deliberations, the jurors submitted a note to the district court asking it to clarify whether the government needed to prove what was charged in the indictment or only what the statute required. The court then gave the following supplemental jury instruction:

> Even though the indictment uses the conjunction "and" to divide the two ways of . . . committing the crime under Section 844(e), if the government proves beyond a reasonable doubt either one of the two alleged means by which it is charged that the defendant violated 844(e), then that element has been proved.

> . . . Therefore, I instruct you that you must all agree unanimously that the defendant either made or caused to be made a threat to unlawfully . . . damage or destroy the house of United States Congressman John Boccieri or you must all agree unanimously that defendant . . . maliciously conveyed false information which he knew to be false concerning an attempt or alleged attempt being made or to be made to unlawfully destroy the house of United States Congressman John Boccieri.

> If you reach such a unanimous decision described in the preceding paragraph, you still must determine whether the government has proved the other elements [that are required by § 844(e)].

(Internal quotation marks omitted in second paragraph.)

Before the supplemental instruction was read to the jury, however, Schmidlin's attorney requested that the following sentence be added: "You cannot split your determination between either." The district court responded to the request by telling him that the supplemental instruction already "says that." Schmidlin's attorney replied by saying: "I think it does, too. I'm just being a little anally retentive."

After receiving the supplemental instruction, the jury found Schmidlin guilty of violating § 844(e). The district court subsequently sentenced him to four months of imprisonment and three years of supervised release. Schmidlin now appeals on the grounds that the district court erred by

failing to give an augmented unanimity jury instruction regarding the elements of the offense, by rejecting his proposed instruction, and by failing to provide the jury with a special-verdict form.

## II. ANALYSIS

### A. Standard of review

We review a district court's denial of a proposed jury instruction under the abuse-of-discretion standard. *United States v. Adams*, 583 F.3d 457, 468-69 (6th Cir. 2009). Jury instructions are viewed "as a whole to determine whether they fairly and accurately inform the jury of relevant considerations and explain the applicable law." *United States v. McGee*, 529 F.3d 691, 695 (6th Cir. 2008) (internal quotation marks omitted). "A trial court's refusal to give a requested jury instruction is reversible error only if the instruction is (1) correct, (2) not substantially covered by the actual jury charge, and (3) so important that failure to give it substantially impairs the defendant's defense." *United States v. Hart*, 635 F.3d 850, 854 (6th Cir. 2011) (brackets and internal quotation marks omitted).

### B. Schmidlin's arguments for reversible error

On appeal, Schmidlin first contends that the district court erred by failing to give a more specific jury instruction on unanimity. Schmidlin claims that he was entitled to an augmented unanimity instruction because such an instruction is required if one of three criteria is met: "1) a count is extremely complex, 2) there is a variance between the indictment and the proof at trial, or 3) there is a tangible risk of jury confusion." *United States v. Krimsky*, 230 F.3d 855, 860 (6th Cir. 2000) (internal quotation marks omitted). He contends that all three criteria have been met in this

case. But even assuming without deciding that Schmidlin was entitled to such an instruction, his argument fails because he received the very instruction that he claims he was entitled to. The district court's supplemental jury instruction spelled out the particular elements of the offense on which the jury needed to be unanimous and is precisely the kind of special unanimity instruction that *Krimsky*, if applicable, would require.

Schmidlin next alleges that the district court erred by refusing his proposed jury instruction. This argument also lacks merit. As stated above, a district court's refusal to deliver a requested instruction "is reversible error only if the instruction is (1) correct, (2) not substantially covered by the actual jury charge, and (3) so important that failure to give it substantially impairs the defendant's defense." *Hart*, 635 F.3d at 854 (brackets and internal quotation marks omitted). Schmidlin's proposed instruction, which would have added a sentence telling the jury that it could not "split your determination between either," does not meet either the second or third requirements.

The proposed instruction does not meet the second requirement because it was substantially covered by the supplemental jury instruction actually given, as Schmidlin's attorney acknowledged before the instruction was read to the jury. Although § 844(e) can be violated in two different ways, the given instruction made clear that Schmidlin could be convicted under the statute only if the jury was unanimous on which of the two ways he had violated § 844(e). Put differently, the supplemental instruction informed the jury that it could not "split your determination between either" way as to how the statute was violated. The proposed instruction was therefore superfluous, so the district court did not err in declining to give it.

Nor does Schmidlin's proposed instruction meet the third requirement—that the instruction be "so important that failure to give it substantially impairs the defendant's defense." *Hart*, 635 F.3d at 854 (brackets and internal quotation marks omitted). Schmidlin's defense at trial was that he did not threaten to burn down Congressman's Boccieri's house during his conversation with Jones, but instead used a poorly chosen metaphor to refer to the power of the vote to "burn down this house of cards." His defense was not in the least impaired—let alone substantially impaired—by the district court's failure to add Schmidlin's proposed sentence to the supplemental jury instruction.

Finally, Schmidlin argues that the district court erred by not providing "an augmented jury instruction verdict form concerning unanimity." But Schmidlin cites no authority that supports his contention, and in fact the caselaw cuts the other way: special-verdict forms are disfavored in criminal cases, so a district court's failure to require such a form does not usually constitute reversible error. *United States v. Blackwell*, 459 F.3d 739, 766-67 (6th Cir. 2006) (noting the "general rule against special verdicts in criminal cases," and holding that the district court's refusal to grant the defendant's request for a special-verdict form was not an abuse of discretion); *see also United States v. Musick*, 291 F. App'x 706, 730 (6th Cir. 2008) (unpublished opinion) ("There is no authority for the proposition that failure to ask the jury to return a special verdict constitutes reversible error."). Moreover, the merit of Schmidlin's argument is especially dubious because he never requested that the district court submit a special-verdict form to the jury. *See Davis v. Rennie*, 264 F.3d 86, 106-07 (1st Cir. 2001) (questioning the defendant's right to object to the lack of a special-verdict form where the defendant did not make such a request to the district court or otherwise object to the general-verdict form).

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.